## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES
UNION; and AMERICAN CIVIL
LIBERTIES UNION FOUNDATION,

　　　　　*Plaintiffs*

v.

OFFICE OF JUSTICE PROGRAMS,
and UNITED STATES DEPARTMENT
OF JUSTICE,

　　　　　*Defendants.*

**COMPLAINT
FOR INJUNCTIVE RELIEF
FOR VIOLATION
OF THE FREEDOM OF
INFORMATION ACT**

## PRELIMINARY STATEMENT

1.　　By this FOIA action against the U.S. Department of Justice ("DOJ") and its Office of Justice Programs ("OJP"), the American Civil Liberties Union and American Civil Liberties Union Foundation seek to vindicate the public's right to know about two multi-million-dollar federal grant programs that dramatically expand federal collaboration with state and local law enforcement agencies to find, arrest, detain, and deport unaccompanied immigrant children.

2.　　The two programs at issue (the "Grant Programs"), administered through the DOJ's OJP and Office of Juvenile Justice and Delinquency Prevention ("OJJP"), purport to "further the Department's mission by strengthening community capacity to stem violence and reduce youthful offending and victimization, improving the response to children's exposure to violence, and enhancing public safety."

3.      In reality, the Grant Programs serve as a platform to further the current administration's strategy of levying specious gang allegations against unaccompanied immigrant children in order to deport them or otherwise deny them immigration benefits.

4.      Despite growing public outcry concerning the government's aggressive immigration enforcement tactics—particularly those targeting children—details about the Grant Programs remain shrouded in secrecy.

5.      On October 17, 2018, Plaintiffs filed a FOIA request ("the Request") with the Office of Justice Programs ("OJP") seeking the release of records concerning the Grant Programs.

6.      Through its ongoing failure to release records or otherwise respond substantively to the Request or Plaintiffs' administrative appeal, OJP has constructively denied the Request and flouted its obligations under the FOIA.

7.      Plaintiffs are entitled to the information they seek. These records will critically contribute to the public understanding of OJJDP's basis for creating the Grant Programs, how they will operate, and how they may impact immigrant youth and their families.

8.      Plaintiffs seek an injunction under 5 U.S.C. § 552 requiring Defendants to conduct a reasonable search for documents responsive to the Request, to make the requested records promptly available to Plaintiffs, and to justify the withholding of any information with detailed and specific justifications as to why the claimed FOIA exemptions apply to the records sought. Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION & VENUE

9.      This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. §§ 552(a)(4)(A)(vii), (4)(B) and (6)(E)(iii). This Court also has jurisdiction over this action under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

10.     Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

11.     Plaintiff American Civil Liberties Union is a national non-profit and non-partisan, 501(c)(4) organization with more than four million members, activists, and supporters dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to ensuring that the United States government complies with the Constitution and laws of this country, including its international legal obligations, in matters that affect civil liberties and human rights. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct and integrity of its government in matters that affect civil liberties, human rights, and public trust in government. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities. The American Civil Liberties Union is incorporated in New York State and has its principal place of business in New York City.

12.     Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil rights and civil liberties. It is incorporated in New York State and has its principal place of business in New York City.

13.     Defendant Office of Justice Programs is a component of the U.S. Department of Justice ("DOJ"). It is headquartered in Washington, D.C.

14.     Defendant Department of Justice is a Department of the Executive Branch of the U.S. government and an agency within the meaning of 5 U.S.C. § 552(f)(1). The DOJ is headquartered in Washington, D.C., and has field offices throughout the country, including in New York City.

3

## FACTUAL BACKGROUND

15.     The Grant Programs at issue in this lawsuit are just the latest efforts in a longstanding campaign by federal immigration authorities to target unaccompanied immigrant children around the nation.

16.     In 2017, Immigration and Customs Enforcement ("ICE") launched "Operation Matador," a program to encourage information sharing between local law enforcement and ICE and to target immigrants based solely on suspected gang affiliation.[1] Under the program, immigration officials can designate anyone a "gang associate" based on as few as two indeterminate criteria, such as frequenting a known gang hangout, which could be any location, or wearing "gang colors," like blue.[2] Though "association" with a gang is not a crime, under Operation Matador, ICE has targeted those designated "gang associates," for arrest and detention.

17.     Police officers stationed in schools are a key source of such dubious evidence of alleged gang connections. Inside of schools, police have close contact with students and school officials are encouraged to share information contained in disciplinary records and other student files.[3] Students are encouraged to confide in these police officers as unofficial counselors.[4] Information and observations collected through schools can then be shared with other law enforcement and federal immigration officials.

---

[1] *See* Hannah Dreier, *He Drew His School Mascot—and ICE Labeled Him a Gang Member*, ProPublica (Dec. 27, 2018), https://features.propublica.org/ms-13-immigrant-students/huntington-school-deportations-ice-honduras/; *see also* Immigration and Customs Enf't, *Combating Gangs*, https://www.ice.gov/features/gangs (last visited June 11, 2019).

[2] Dreier, *supra* note 1.

[3] *See* Am. Civil Liberties Union, Bullies in Blue 16–17 (2017), https://www.aclu.org/sites/default/files/field_document/aclu_bullies_in_blue_4_11_17_final.pdf.

[4] *Id.* at 14.

18.     The New York Civil Liberties Union,[5] the New York affiliate of the

ALCU, and media outlets have voiced serious concern over local law enforcement

agency partnerships with school districts and federal immigration authorities, arguing that

these partnerships create a "school-to-deportation pipeline," leading to children being

separated from their families, placed in restrictive detention facilities, and subjected to

deportation proceedings based on flimsy claims of gang affiliation.[6]

---

[5] *See, e.g.*, Class Action Complaint and Petition for Writ of Habeas Corpus, *L.V.M. v. Lloyd*, No. 1:18-cv-01453 (S.D.N.Y. Feb. 16, 2018), ECF No. 1.; Irma Solis & JP Perry, *Why Stopping the School-to-Deportation Pipeline Will Make Schools Safer for Everyone*, NYCLU Blog (Feb. 13, 2019, 12:00 PM), https://www.nyclu.org/en/news/why-stopping-school-deportation-pipeline-will-make-schools-safer-everyone; New York Civil Liberties Union & New York Immigration Coal., Stuck With Suspicion (2019), https://www.nyclu.org/sites/default/files/field_documents/020819-nyclu-nyic-report_0.pdf.

[6] *See, e.g.*, Thomas S. Dee, *When Police Team up with ICE, It Ripples into Classrooms*, LA Times (Nov. 1, 2018, 3:05 AM), https://www.latimes.com/opinion/op-ed/la-oe-dee-ice-287g-schools-20181101-story.html; Francie Diep, *How Immigration Crackdowns Are Hurting America's Poorest Schools*, Pacific Standard (Mar. 9, 2018), https://psmag.com/education/immigration-crackdowns-schools; Erica L. Green, *For Immigrant Students, a New Worry: A Call to ICE*, N.Y. Times (May 30, 2018), https://www.nytimes.com/2018/05/30/us/politics/immigrant-students-deportation.html; Mark Keierleber, *New Study: More Than 300,000 Children Have 'Vanished' from Schools After Local Police Formed Partnerships with ICE*, The 74 Million (Sept. 26, 2018), https://www.the74million.org/new-study-more-than-300000-children-have-vanished-from-schools-after-local-police-formed-partnerships-with-ice/; Rebecca Klein, *Some Schools Help Undocumented Students Get Lawyers. Others Funnel Them to ICE. Two students' divergent paths show the different ways schools are handling immigration issues*, HuffPost (Aug. 23, 2018, 5:46 AM), https://www.huffpost.com/entry/undocumented-students-ice_n_5b7dc9c6e4b0348585fd137a; Catherine E. Shoichet, *ICE Raided a Meatpacking Plant. More Than 500 Kids Missed School the Next Day*, CNN (Apr. 12, 2018, 7:01 AM), https://www.cnn.com/2018/04/12/us/tennessee-immigration-raid-schools-impact/index.html; Alice Speri, *From School Suspension to Immigration Detention: For Immigrant Students on Long Island, Trump's War on Gangs Means the Wrong T-Shirt Could Get You Deported*, The Intercept (Feb. 11, 2018, 12:10 PM), https://theintercept.com/2018/02/11/ice-schools-immigrant-students-ms-13-long-island/; Tina Vasquez, *With Gang Allegations, Educators Are Funneling Migrant Teens into a School-to-Deportation Pipeline*, RewireNews (May 24, 2018, 5:01 PM), https://rewire.news/article/2018/05/24/gang-allegations-educators-funneling-migrant-teens-school-deportation-pipeline/; Tina Vasquez, *By Painting Asylum Seekers as 'Violent Animals,' Trump Unlocked a School-to-Deportation Pipeline*, RewireNews

19.     Much of the concern regarding the school-to-deportation pipeline arose from the experiences of young people targeted through Operation Matador. As of December 2018, ICE had detained about 170 unaccompanied immigrant youth under Operation Matador, including a dozen students from Huntington High School in Suffolk County, New York.[7] Some of these students were detained on the basis of such trivial things as possessing drawings of the school mascot and the area code for their home country, which were characterized as "gang paraphernalia."[8]

20.     This treatment is not only extremely harmful to the children and families it affects; it is unlawful and raises grave civil liberties concerns, including the deprivation of due process, excessive restraint of liberty, and interference with the right to access the courts and petition the government.[9] Immigration authorities often detain children without meaningful review of the allegations of gang affiliation; without informing the children, their families or their immigration counsel of the basis of these allegations; and without providing an opportunity to review or challenge the evidence.[10]

21.     Despite these serious concerns, in July 2018, OJJDP issued a call for proposals for two new funding opportunities for state and local law enforcement agencies, "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial

---

(May 24, 2018, 5:00 PM), https://rewire.news/article/2018/05/24/painting-asylum-seekers-violent-animals-trump-unlocked-school-deportation-pipeline/; *see also* Saunjuhi Verma, Patricia Maloney & Duke W. Austin, *The School to Deportation Pipeline: The Perspectives of Immigrant Students and Their Teachers on Profiling and Surveillance Within the School System*, 673 The Annals of the Am. Acad. of Pol. and Soc. Sci. 209 (2017).

[7] Dreier, *supra* note 1.

[8] *Id.*

[9] *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1181–82 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018).

[10] *See, e.g.*, NYCLU & NYIC, *supra* note 5.

Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845 ("UAC Gang Suppression Grant Program" or "Program") (attached as Exhibit A), and "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582 (attached as Exhibit B). These Grant Programs threaten to expand the harmful practices of Operation Matador.

22.     The UAC Gang Suppression Grant Program is premised on troubling and conclusory allegations that unaccompanied immigrant youth pose a threat to public safety. The Program description concedes that law enforcement agencies and researchers have yet to determine a universal definition for what constitutes a "gang" or "gang member." Notwithstanding lacking a uniform definition of a gang, and recognizing there are no official statistics on the gang involvement of unaccompanied immigrant youth, the Program description asserts that unaccompanied immigrant youth are uniquely susceptible to gang recruitment.

23.     The Program will provide up to $1.2 million to each of six grantees and has awarded a total of $4.8 million to four grantees so far, including Suffolk County, New York. [11] In collaboration with "key stakeholders," but led by "law enforcement," including the U.S. Attorney's Office, applicants are asked to identify contacts within the Office of Refugee Resettlement ("ORR")—the agency responsible for caring for immigrant children in government custody— to obtain information regarding unaccompanied immigrant youth who have either "self-disclosed" or have been identified as gang affiliated. Among various other requirements, applicants must include an

---

[11] OJJDP has awarded grants to the Nevada Office of the Attorney General in Nevada, Dallas County in Texas, Suffolk County in New York, and the Bernalillo County Sheriff's Department in New Mexico. Awards Made for Solicitation as of June 11, 2019, OJJDP, *available at* https://external.ojp.usdoj.gov/SelectorServer/awards/pdf/solicitation/OJJDP%20FY%2018%20Gang%20Suppression:%20A%20Law%20Enforcement%20and%20Prosecutorial%20Approach%20to%20Address%20Gang%20Recruitment%20of%20Unaccompanied%20Alien%20Children.

implementation plan that accounts for the maintenance and safeguarding of gang intelligence and its secure transmission to ORR. An award also comes with certain conditions. Chief among them is a requirement that recipient jurisdictions cooperate with the Department of Homeland Security on issues of immigration enforcement.

24.     There is significant public interest in understanding the Program, the basis for its formulation, its objectives, its implementation through local law enforcement, and the potential consequences for immigrant youth. There is a "compelling need" for the ACLU to obtain this information so that we can disseminate accurate information to the public, serve clients, and promote political and fiscal accountability.

## THE FOIA REQUEST

25.     On October 17, 2018, Plaintiffs submitted a request under the FOIA, 5 U.S.C § 552, and the DOJ implementing regulations, 28 C.F.R. § 16.1 *et seq.*, to Defendant OJP. ("Request," attached as Exhibit C). The Request seeks information pertaining to the OJJDP Grant Programs.

26.     Specifically, the Request seeks eleven categories of records:

a.   All records submitted to OJJDP as part of an application for grant funding through "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845;

b.   All records submitted to OJJDP as part of an application for grant funding through OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

c.   Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and any response provided by OJJDP or any other federal government agency or department;

d.   Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582, and any response provided by OJJDP or any other federal

government agency or department;

e. All records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845;

f. All records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

g. All records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845;

h. All records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

i. All records related to the planned use by OJJDP or any other federal government agency or division of information obtained by grantees under "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

j. All records related to the source and budgeting of funds for "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582; and

k. All records related to the information relied upon and supporting the preference for a law enforcement and prosecutorial approach through OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.

27.     The Request included an application for expedited processing and an application for waiver or limitation of fees as provided by the FOIA, 5 U.S.C § 552(a)(6)(E); *id.* at § 552(a)(4)(A).

**AGENCY RESPONSE**

28.     On October 23, 2018, OJP responded to and acknowledged receipt of the Request. ("Response," attached as Exhibit D). The Response noted that the Agency would be "extending the time limit to respond to [Plaintiffs'] request beyond the ten additional days provided by the statute," because the "unusual circumstances" exception applies. *Id.* at 1 (citing 5 U.S.C § 552(a)(6)(B)(i)-(iii)). The Response also informed Plaintiffs that a search had not yet been conducted "to determine whether there [were] records within the scope of [the] request." *Id.*

29.     In the Response, OJP advised that it had "not yet made a decision on [Plaintiffs'] request for a fee waiver" and that it would do so after determining whether processing would "result in any assessable fees." *Id.* Plaintiffs received no further communication from OJP regarding their application for a fee waiver.

30.     OJP further advised that the agency had "not yet made a determination on [Plaintiffs'] request for expedited processing" and that Plaintiffs would "be notified once a determination has been made." *Id.* Plaintiffs received no further communication from OJP regarding their application for expedited processing.

31.     Plaintiffs made numerous good faith attempts to communicate with OJP regarding an interim response and an alternative timeframe for the release of responsive records. ("Administrative Appeal," attached as Exhibit E).

32.     Through these communications, OJP indicated that it had determined prior to December 1, 2018, that responsive records exist and suggested repeatedly that at least an initial release of documents would soon be forthcoming. On December 14, 2018, the assigned OJP FOIA officer e-mailed Plaintiffs stating that "[r]ecords related to [the]

10

request are being processed and OJP anticipates making an interim response in the coming weeks." Ex. E, 2. Plaintiffs made multiple subsequent communications seeking "further clarity as to the reason for the delay in providing [an] interim response" and a date that the documents would be produced. Ex. E, 2.

33.    Defendant OJP has, as of the date of this filing, failed to respond or provide any responsive documents. OJP's failure to respond to Plaintiffs' Request as well as to their applications for expedited processing and for a waiver or limitation of fees constitutes a constructive denial.

## ADMINISTRATIVE EXHAUSTION

34.    Plaintiffs have exhausted all applicable administrative remedies.

35.    By letter dated May 6, 2019, Plaintiffs filed a timely administrative appeal with the DOJ's Office of Information Policy. Ex. E.

36.    FOIA requires OIP to make a determination regarding the appeal within twenty working days, 5 U.S.C § 552(a)(6)(A)(ii), by June 4, 2019. To date, OIP has failed to respond to the appeal or release any responsive records. OIP's failure to respond constitutes a constructive denial.

## CAUSE OF ACTION

1.    The Defendants' actions, including its constructive denial of the Plaintiffs' FOIA request and requests for expedited processing and waiver of fees, violate FOIA, 5 U.S.C. § 552(a), and the corresponding regulations.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

A.    Order Defendants to conduct a thorough search for all responsive records;

B.    Order Defendants to immediately process all located records;

C.    Order Defendants to promptly disclose the requested records in their entirety and to make copies available to Plaintiffs;

11

D.      Enjoin Defendants from charging Plaintiffs fees for processing the Request;

E.      Award Plaintiffs their litigation costs and reasonable attorneys' fees incurred in this action; and

F.      Grant such other relief as the Court may deem just and proper.

Dated: June 12, 2019

Respectfully Submitted,

*/s/  Sarah Hinger*
Sarah Hinger
Joshua David Riegel
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—18th Floor
New York, New York 10004
T: (212) 549-2500
F: (212) 549-2654
*shinger@aclu.org*
*jriegel@aclu.org*

*/s/  Amy Belsher*
Amy Belsher
Antony Gemmell
Jessica Perry
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—19th Floor
New York, New York 10004
T: (212) 607-3300
F: (212) 607-3318
abelsher@nyclu.org