# EXHIBIT C

SARAH HINGER
STAFF ATTORNEY
RACIAL JUSTICE PROGRAM
T/212.519.7882
SHINGER@ACLU.ORG

October 17, 2018

**PRIVILEGED AND CONFIDENTIAL**

VIA E-MAIL AND USPS

Dorothy Lee
Office of Justice Programs
Office of the General Counsel
Attention: FOIA Staff
810 7th Street, NW
Room 5400
Washington, DC 20531
202-307-0790
FOIAOJP@usdoj.gov



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Office
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
aclu.org

**Re: Freedom of Information Act Request (Expedited Process & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submits this Freedom of Information Act ("FOIA") request (the "Request") pursuant to the FOIA, 5 U.S.C. § 552 *et seq.*, and the relevant implementing regulations for records related to the Office of Juvenile Justice and Delinquency Prevention ("OJJDP") grant programs "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.

I. **Requests**

Please provide the following:

1. Any and all records submitted to OJJDP as part of an application for grant funding through "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang

---

[1] The American Civil Liberties Union Foundation is a § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845.
2. Any and all records submitted to OJJDP as part of an application for grant funding through OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
3. Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and any response provided by OJJDP or any other federal government agency or department.
4. Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582, and any response provided by OJJDP or any other federal government agency or department.
5. Any and all records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845.
6. Any and all records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
7. Any and all records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845.
8. Any and all records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
9. Any and all records related to the planned use by OJJDP or any other federal government agency or division of information obtained by grantees under "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
10. Any and all records related to the source and budgeting of funds for "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
11. Any and all records related to the information relied upon and supporting the preference for a law enforcement and prosecutorial approach through OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-

13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.

For purposes of this request, the term "records" includes but is not limited to any and all objects, writings, drawings, graphs, charts, tables, electronic or computerized data compilations, budgets, accountings, balance sheets or other financial statements, invoices, receipts, minutes, emails, electronic or computerized documents, photographs, audiotapes, videotapes, transcripts, drafts, correspondence, notes, notes of oral communications, and non-identical copies, including but not limited to copies with notations.

For purposes of this request, the term "OJJDP" means any individual or group of individuals working for OJJDP and any sub-department, office, board, program, group, agency, bureau, administration, and/or other subdivision within OJJDP.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## II.   Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for these records, as defined in the statute, because the information is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged federal activity." 5 U.S.C. § 552(a)(6)(E)(v).

### A.   *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[2]

The ACLU regularly publishes STAND, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 980,000 people. The ACLU also publishes regular updates and alerts via

---

[2] Courts have found that the ACLU and other organizations with similar missions that use similar approaches to distribute information are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

email to more than 3.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to more than 3.8 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[3] and ACLU attorneys are interviewed frequently in news stories about documents released through ACLU FOIA requests.[4]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[5]

The ACLU also regularly publishes books, "know your rights" materials,

---

[3] *See, e.g.*, Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit*(June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit.

[4] *See, e.g.*, Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[5] *See, e.g.*, ACLU, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; ACLU, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; ACLU, New NSA Documents Shine More Light into Black Box of Executive Order 12333 (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[6] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[7]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through FOIA. For example, through compilation and analysis of information gathered

---

[6] *See, e.g.*, ACLU, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; ACLU, *Mapping the FBI* (last visited Oct. 17, 2017), https://www.aclu.org/mappingthefbi; ACLU, *CRST FOIA* (last visited Oct. 17, 2017), https://www.aclu.org/national-security/csrt-foia; ACLU, *ACLU V. DOJ—Lawsuit To Enforce NSA Warrantless Surveillance FOIA Request* (last visited Oct. 17, 2017), http://www.aclu.org/safefree/nsaspying/30022res20060207.html; ACLU, *PATRIOT FOIA* (last visited Oct. 17, 2017), https://www.aclu.org/patriot-foia; ACLU, *NSL Documents Released By DOD* (last visited Oct. 17, 2017), https://www.aclu.org/nsldocumentsreleaseddod?redirect=cpredirect/32088.

[7] *The Torture Database*, https://www.thetorturedatabase.org (last visited Oct. 17, 2017); *see also* ACLU, *Targeted Killing FOIA Database* (last visited Oct. 17, 2017), https://www.aclu.org/foia-collection/targeted-killing-foia-database.

from various sources—including information obtained from the government through FOIA requests—the ACLU created a website titled "Mapping the FBI," which provides the public and news media with information about the FBI's investigative and intelligence collection activities.[8] Similarly, the ACLU has used information gathered through FOIA requests to build an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[9] And the ACLU produced a summary of documents released in response to a FOIA request related to the FISA Amendments Act;[10] a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests;[11] and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[12]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, release of these records would inform the public about OJJDP's expenditure of government funds, about OJJDP's role in the government's continuing effort to classify unaccompanied minors as gang members, and about OJJDP's proposed partnerships with law enforcement agencies, local governments, and tribal governments. The ACLU has previously engaged in the dissemination of information to the public on these matters.[13]

---

[8] ACLU, *Mapping the FBI* (last visited Oct. 17, 2017), https://www.aclu.org/issues/national-security/privacy-and-surveillance/mapping-fbi-0.

[9] ACLU, *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance* (last visited Oct. 17, 2017), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[10] ACLU, *Summary Of FISA Amendments Act FOIA Documents Released on November 29, 2010* (last visited Oct. 17, 2017), https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[11] ACLU, Statistics on NSLs Produced by Department of Defense (last visited Oct. 17, 2017), https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[12] ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[13] *See generally*, ACLU, *Saravia v. Sessions* (last visited October 9, 2018), https://www.aclunc.org/our-work/legal-docket/saravia-v-sessions-due-process-immigrant-youth; ACLU, *LVM v. Lloyd*, (last visited October 11, 2018), https://www.nyclu.org/en/press-releases/court-halts-trump-administration-policy-prolonging-detention-hundreds-immigrant.

### III. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

#### A. *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

News accounts underscore the substantial public interest in the governments' treatment of unaccompanied minors[14] and in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of the government's treatment of unaccompanied minors and particularly, of government attempts to identify unaccompanied minors as gang-affiliated, an issue of profound public importance.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

#### B. *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an

---

[14] *See, e.g.*, Anjali Tsui, *In Crackdown on MS-13, a New Detention Policy Raises Alarms*, Frontline (Feb. 18, 2018), https://www.pbs.org/wgbh/frontline/article/in-crackdown-on-ms-13-a-new-detention-policy-raises-alarms/; Sarah Gonzalez, *Teens Arrested on Gang Suspicion are Released Due to Lack of Evidence*, National Public Radio (Dec. 5, 2017), https://www.npr.org/2017/12/05/568351544/teens-arrested-on-gang-suspicion-are-released-due-to-lack-of-evidence; Liz Robbins, *Teenagers' Arrests are Unconstitutional, A.C.L.U. Lawsuit Says*, New York Times (Aug. 11, 2017), https://www.nytimes.com/2017/08/11/nyregion/aclu-lawsuit-ms-13-teenager-arrests-.html; Anita Chabria and Nashelly Chavez, *Court Rules Feds Can't hold Group of Immigrant Minors on Gang Allegations without Access to a Judge*, Sacramento Bee (Nov. 22, 2017), https://www.sacbee.com/news/local/crime/article186155288.html.

organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*,321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons they are "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be
"representatives of the news media," even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5, 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *see also Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester); *cf. Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260.

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[15] As was true in those instances, the ACLU meets the requirements for a

---

[15] For example, in May 2016, the FBI granted a fee-waiver request regarding a FOIA request submitted to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the DOJ granted the ACLU a fee waiver with respect to the same request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the
ACLU on a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The DOJ did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December

fee waiver here.

\* \* \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to the FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. *See* 5 U.S.C. § 552(b). The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

> Sarah Hinger
> Staff Attorney
> American Civil Liberties Union Foundation
> 125 Broad St., 18th Fl.
> New York, NY 10004
> shinger@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

/s/ Sarah Hinger
Sarah Hinger
Racial Justice Program
American Civil Liberties Union
    Foundation
125 Broad St., 18th Fl.
New York, NY 10004
shinger@aclu.org
T: 212-514-7882

---

2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the DOJ Office of Information and Privacy—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.