UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION
and AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,

Plaintiffs,

- against -

DEPARTMENT OF JUSTICE and OFFICE
OF JUSTICE PROGRAMS,

Defendants.

No. 19 Civ. 5483 (MKV)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2768
Facsimile:  (212) 637-2702
Email:       stephen.cha-kim@usdoj.gov

*Attorney for Defendants*

STEPHEN CHA-KIM
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT ....................................................................................................................3

 A. Summary Judgment May Be Granted on the Basis of Defendants' Good-Faith
   Declarations ..............................................................................................4

 B. DOJ Properly Applied the Relevant Exemptions .....................................................5

   1. Exemption 6 ...................................................................................5

   2. Exemption 7(C).................................................................................9

   3. Exemption 7(E) ...............................................................................10

 C. DOJ Properly Withheld Non-Responsive Records.................................................12

 D. All Reasonably Segregable Portions of Records Were Produced ........................15

CONCLUSION..................................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*ACLU v. DOJ*,
    655 F.3d 1 (D.C. Cir. 2011) .................................................................................. 9

*ACLU v. U.S. Dep't of Def.*,
    901 F.3d 125 (2d Cir. 2018) ................................................................................. 5

*Allard K. Lowenstein Int'l Human Rights Project v. U.S. Dep't of Homeland Sec.*,
    626 F.3d 678 (2d Cir. 2010) ............................................................................... 11

*American Immigration Lawyers Association v. Executive Office for Immigration Review*,
    830 F.3d 667 (D.C. Cir. 2016) ................................................................. 12, 13, 14

*Assadi v. U.S. Dep't of State*,
    No. 12 Civ. 1111 (LLS), 2014 WL 4704840 (S.D.N.Y. Sept. 22, 2014)................... 5

*Associated Press v. U.S. Dep't of Def.*,
    554 F.3d 274 (2d Cir. 2009) ............................................................................ 8, 10

*Bishop v. U.S. Dep't of Homeland Sec.*,
    45 F. Supp. 3d 380 (S.D.N.Y. 2014) .................................................................. 11

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Homeland Sec.*,
    331 F. Supp. 3d 74 (S.D.N.Y. 2018) .................................................................. 12

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994).............................................................................. 4, 5

*Cause of Action Institute v. DOJ*,
    453 F. Supp. 3d 368 (D.D.C. 2020) .......................................................... 13, 14, 15

*Center for Biological Diversity v. U.S. Army Corps of Engineers*,
    405 F. Supp. 3d 127 (D.D.C. 2019) ..................................................................... 7

*DiGirolamo v. DEA*,
    No. 15 Civ. 5737 (ALC), 2017 WL 4382097 (S.D.N.Y. Sept. 29, 2017)................ 10

*Doherty v. DOJ*,
　　775 F.2d 49 (2d Cir. 1985) ................................................................ 11

*DOJ v. Reporters Committee For Freedom of Press*,
　　489 U.S. 749 (1989) ........................................................................... 10

*Electronic Privacy Information Center v. U.S. Dep't of Homeland Security*,
　　384 F. Supp. 2d 100 (D.D.C. 2005) ..................................................... 7

*Families for Freedom v. U.S. CBP*,
　　837 F. Supp. 2d 287 (S.D.N.Y. 2011) ................................................. 14

*Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*,
　　958 F.2d 503 (2d Cir. 1992) ................................................................. 9

*Flores v. DOJ*,
　　391 F. Supp. 3d 353 (S.D.N.Y. 2019) ................................................. 14

*Gov't Accountability Project v. Dep't of State*,
　　699 F. Supp. 2d 97 (D.D.C. 2010) ....................................................... 8

*Grand Cent. P'ship, Inc. v. Cuomo*,
　　166 F.3d 473 (2d Cir. 1999) .......................................................... 3, 10

*Jett v. FBI*,
　　139 F. Supp. 3d 352 (D.D.C. 2015) ................................................... 12

*John Doe Agency v. John Doe Corp.*,
　　493 U.S. 146 (1989) ......................................................................... 3, 5

*Judge Rotenberg Educational Center, Inc. v. FDA*,
　　376 F. Supp. 3d 47 (D.D.C. 2019) ..................................................... 13

*Judicial Watch, Inc. v. Export-Import Bank*,
　　108 F. Supp. 2d 19 (D.D.C. 2000) ....................................................... 6

*Keys v. DOJ*,
　　830 F.2d 337 (D.C. Cir. 1987) .......................................................... 11

*Levinthal v. Federal Election Commission*,
219 F. Supp. 3d 1 (D.D.C. 2016) .......................................................................... 11

*Lewis v. DOJ*,
867 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................ 8

*Long v. Office of Personnel Management*,
692 F.3d 185 (2d Cir. 2012).......................................................................... 6, 7, 8

*N.Y. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*,
771 F. Supp. 2d 289 (S.D.N.Y. 2011)................................................................... 11

*N.Y. Times Co. v. DOJ*,
872 F. Supp. 2d 309 (S.D.N.Y. 2012)..................................................................... 5

*National Ass'n of Retired Federal Employees v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) ............................................................................... 7

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
402 F. Supp. 2d 211 (D.D.C. 2005) ...................................................................... 15

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)................................................................................................ 4

*Pinson v. DOJ*,
177 F. Supp. 3d 56 (D.D.C. 2016) .......................................................................... 8

*Poitras v. U.S. Dep't of Homeland Sec.*,
303 F. Supp. 3d 136 (D.D.C. 2018) ...................................................................... 12

*Sack v. U.S. Dep't of Def.*,
823 F.3d 687 (D.C. Cir. 2016) ................................................................................ 9

*Schwarz v. U.S. Dep't of Treasury*,
131 F. Supp. 2d 142 (D.D.C. 2000) ........................................................................ 8

*Seife v. U.S. Dep't of State*,
298 F. Supp. 3d 592 (S.D.N.Y. 2018)................................................................. 8, 9

*Shapiro v. CIA*,
   247 F. Supp. 3d 53 (D.D.C. 2017) ........................................................................ 15

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) .......................................................................... 16

*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .............................................................................. 11

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ............................................................................................ 10

*U.S. Dep't of State v. Washington Post Co.*,
   456 U.S. 595 (1982) .............................................................................................. 6

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) .............................................................................. 5

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) .................................................................................... 5

*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005) ............................................................................... 6, 8

**STATUTES**

5 U.S.C. § 551 ............................................................................................................ 13

5 U.S.C. § 552 .............................................................................................................. 1

5 U.S.C. § 552(a) ......................................................................................................... 3

5 U.S.C. § 552(a)(3)(C) ............................................................................................... 4

5 U.S.C. § 552(b) ....................................................................................................... 16

5 U.S.C § 552(b)(6) ...................................................................................................... 5

5 U.S.C. § 552(b)(7)(C) ............................................................................................... 9

5 U.S.C. § 552(b)(7)(E) ......................................................................................... 10, 11

5 U.S.C. § 552(b)(9) ................................................................................................ 4, 15

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................... 4

Defendants the Department of Justice and its component the Office of Justice Programs ("OJP") (collectively, "DOJ"), by and through their attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for summary judgment in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

Plaintiffs the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, "ACLU") seek records related to two grant programs administered by OJP and the Office of Juvenile Justice and Delinquency Prevention ("OJJDP"), which assist local communities combat gang activity targeting undocumented youth. In response to that request, DOJ conducted a comprehensive search and processed tens of thousands of pages of records. Although the parties have significantly narrowed the issues still in dispute in this matter, Plaintiffs continue to challenge certain withholdings made under FOIA Exemptions 6, 7(C) and 7(E). 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(E). Plaintiffs also assert that DOJ improperly withheld information located within otherwise responsive records.

As set forth below, DOJ has redacted only that information that falls within valid exemptions to disclosure, withheld only non-responsive records (and not information within responsive records), and otherwise properly segregated and disclosed all responsive records. Accordingly, the Court should grant summary judgment in favor of DOJ.

## BACKGROUND

The FOIA request at issue in this case concerns two OJJDP grant programs made available to state and local law enforcement entities during the 2018 fiscal year to help address violence and gang activity among undocumented immigrant youth: "OJJDP FY 2018 Gang

Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children" ("Gang UAC Program") and "OJJDP FY 2018 Gang Suppression Planning Grants Program" ("Gang Suppression Planning Program"). Compl. [Dkt. No. 1] ¶ 21. On or around October 17, 2018, Plaintiffs submitted their request, seeking eleven categories of records related to the two grant programs:

> (a)  Any and all records submitted to OJJDP as part of an application for grant funding through [Gang UAC Program].
> (b)  Any and all records submitted to OJJDP as part of an application for grant funding through [Gang Suppression Planning Program].
> (c)  Inquiries, communications, or other records received by OJJDP regarding [Gang UAC Program], and any response provided by OJJDP or any other federal government agency or department.
> (d)  Inquiries, communications, or other records received by OJJDP regarding [Gang Suppression Planning Program], and any response provided by OJJDP or any other federal government agency or department.
> (e)  Any and all records exchanged between OJJDP and any other agency or department of federal government related to [Gang UAC Program].
> (f)  Any and all records exchanged between OJJDP and any other agency or department of federal government related to [Gang Suppression Planning Program].
> (g)  Any and all records related to the evaluation of applications received pursuant to [Gang UAC Program].
> (h)  Any and all records related to the evaluation of applications received pursuant to [Gang Suppression Planning Program].
> (i)  Any and all records related to the planned use by OJJDP or any other federal government agency or division of information obtained by grantees under [Gang UAC Program], and/or [Gang Suppression Planning Program].
> (j)  Any and all records related to the source and budgeting of funds for [Gang Suppression Grant], and/or [Gang Suppression Planning Program].
> (k)  Any and all records related to the information relied upon and supporting the preference for a law enforcement and prosecutorial approach through [Gang UAC Program], and/or [Gang Suppression Planning Program].

Declaration of Daniel Gaylord ("Gaylord Decl.") ¶ 5. On October 23, 2018, the agency acknowledged receipt of the request. *Id.* ¶ 6.

On June 12, 2019, Plaintiffs commenced the present action. *See* Compl. DOJ encountered initial delays in processing Plaintiffs' request, in part because OJP had at one point only one employee available to handle all the component's FOIA requests, and in part because the nature

of the records at issue meant that OJP had to consult with the relevant grant applicants to determine if there was law enforcement sensitive or other exempt information contained within responsive records. *See* Ltr. dated Aug. 9, 2019 [Dkt. No. 26]. DOJ began processing and producing records on August 7, 2019, and continued making disclosures on a rolling basis thereafter. *See* Ltr. dated Apr. 29, 2020 [Dkt. No. 33]. OJP ultimately processed 55,940 pages and produced 6,132 pages pursuant to Plaintiffs' request. Gaylord Decl. ¶ 7.

As a threshold matter, ACLU does not challenge the adequacy of the agency's search. *See* Joint Ltr. dated Sep. 9, 2020 [Dkt. No. 42]. Following good faith negotiations to narrow the scope of issues in dispute in this litigation, including additional conferrals since the parties last updated the Court in their joint letter on September 9, 2020, the only remaining redactions that Plaintiffs challenge concern information withheld in part and in full under Exemptions 6, 7(C), and 7(E). Gaylord Decl. ¶¶ 9-10. The ACLU also asserts that DOJ has improperly withheld portions of records on the grounds of non-responsiveness. *See* Joint Ltr. dated Sep. 9, 2020.

## ARGUMENT

Congress's purpose in enacting FOIA was "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-147 at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). To that end, FOIA generally requires federal agencies to make records and other materials "available to the public," 5 U.S.C. § 552(a), on the basis of an adequate search "reasonably calculated to discover the requested documents," *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The Government must also ensure that "[a]ny reasonably segregable portion of a record shall be provided to any person

requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9).

However, FOIA specifically exempts nine categories of information from public disclosure. *See id.* § 552(b). These exemptions from mandatory disclosure were carved out "in order to protect specified confidentiality and privacy interests." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220-21 (1978). In this action, Plaintiffs challenge DOJ's application of exemptions protecting individuals' private personal information and sensitive law enforcement-related material.

For the reasons set forth below, DOJ properly applied the relevant exemptions, produced responsive information on a record-by-record basis, and reasonably segregated responsive information.

## A. Summary Judgment May Be Granted on the Basis of Defendants' Good-Faith Declarations

As a threshold matter, actions brought under FOIA are generally resolved by summary judgment. *See, e.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, courts consider two issues: whether the agency has made "reasonable efforts to search for the records" requested, 5 U.S.C. § 552(a)(3)(C), and, if an agency's search locates records responsive to a request, whether the agency has properly withheld records or information under any of FOIA's exemptions, *id.* § 552(a)(4)(B). *See, e.g.*, *Carney*, 19 F.3d at 812. "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are

sufficient to sustain the agency's burden." *Id.* (footnote omitted).[1] Moreover, an agency's declarations in support of its determinations are accorded a presumption of good faith. *See, e.g.*, *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

## B. DOJ Properly Applied the Relevant Exemptions

Because Plaintiffs do not challenge the adequacy of the search itself, the Court may proceed to consideration of the propriety of the asserted exemptions. DOJ properly applied relevant exemptions to disclosure in making the challenged withholdings. The FOIA exemptions, each established by Congress in light of a compelling countervailing interest to disclosure, are "intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152. The factual basis for an agency's withholdings is typically put forward in declarations by agency personnel, *see Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), to enable a court to decide whether the exemptions were justified. *See, e.g.*, *Carney*, 19 F.3d at 812; *Assadi v. U.S. Dep't of State*, No. 12 Civ. 1111 (LLS), 2014 WL 4704840, at *2 (S.D.N.Y. Sept. 22, 2014). "[T]he agency's justification is sufficient if it appears logical and plausible." *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133-34 & n.9 (2d Cir. 2018), *as amended* (Aug. 22, 2018). Through its declarant, DOJ has satisfied this standard for each of the asserted exemptions.

### 1. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C § 552(b)(6). Congress' intent behind this exemption was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."

---

[1] For that reason, in this District courts typically exempt FOIA actions from the requirements of Local Rule 56.1. *See N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). In accordance with that practice, the Government has not submitted a Local Rule 56.1 statement in this case.

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The Second Circuit has adopted a two-part inquiry to determine whether information falls under Exemption 6: courts must first assess "whether the personal information is contained in a file similar to a medical or personnel file," and then "balance the public's need for the information against the individual's privacy interest to determine whether . . . disclosure . . . would constitute a 'clearly unwarranted invasion of personal privacy.'" *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005). The first step of the analysis is not in reasonable dispute given the nature of the withheld information: names, phone numbers, and email addresses. As to the second, "the bar is low: FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests." *Long v. Office of Personnel Management*, 692 F.3d 185, 191 (2d Cir. 2012) (citation and internal quotation marks omitted).

DOJ redacted the names and identifying information, to the extent that such information would be tantamount to disclosing names, of individuals who are employees of the various state and local entities applying for the OJJDP grants. Gaylord Decl. ¶ 11. Some of the redactions in question were made on individuals' resumes, *id.*, material which constitutes identifying information that falls under the ambit of Exemption 6. *See Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 37 (D.D.C. 2000) ("Information in the resumes is likely available from other sources such as educational and professional directories or the Internet. Thus, disclosure of even portions of the resumes would enable the public to match up employment history, schooling accomplishments, and other resume matter . . . to indirectly identify the applicant.") (citation and internal quotation marks omitted). The agency has also the contact information, such as telephone numbers, of some of these individuals. Gaylord Decl. ¶ 11.

As courts have long held, as a general matter, "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name . . . is significant." *National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Although "[n]ames and other identifying information do not *always* present a significant threat to an individual's privacy interest," courts must engage in a "context-specific" analysis that looks to "the consequences likely to ensue" from disclosure, including whether disclosure of an individual's "occupation alone could subject the employee to harassment or attack." *Long*, 692 F.3d at 191-92 (citations omitted). As the Second Circuit has explained, "employees in both [ ] sensitive agencies and [ ] sensitive occupations have a cognizable privacy interest in keeping their names from being disclosed wholesale"—particularly those working in "national security, homeland security, or law enforcement," as "the mission and nature of the work performed . . . render[s] not only individuals in specific occupations within the agencies, but any employee in the agency, vulnerable to harassment or attack." *Id*. at 192. The individuals redacted here not only work for local and state law enforcement agencies, the subject matter of the request at issue, touching on the sensitive topic of law enforcement within immigrant communities, further supports the significant privacy interest at stake. *See Center for Biological Diversity v. U.S. Army Corps of Engineers*, 405 F. Supp. 3d 127, 144 (D.D.C. 2019) (upholding redaction of names of Customs and Border Protection employees based on their "cognizable interest" in privacy given climate "surrounding immigration"); *Electronic Privacy Information Center v. U.S. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 116–17 (D.D.C. 2005) (recognizing privacy interest of "advocates for security measures that may be unpopular").

Moreover, there is no discernable public interest in disclosure of the individuals' names against which this cognizable privacy interest must be balanced. "The only public interest

cognizable under FOIA is the public understanding of the operations or activities of the government," and in this context, "disclosure of individual employee names tells nothing about what the government is up to." *Long*, 692 F.3d at 193 (citations omitted); *see also Wood*, 432 F.3d at 89 (insufficient public interest in disclosure of employee names at law enforcement agency); *Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 150 (D.D.C. 2000) ("Disclosure of [names] . . . would not contribute to the public understanding of government functions."). To the extent that Plaintiffs seek the names of the individuals as a means of furthering some follow-up purpose, courts disfavor "recognizing a public interest in this 'derivative' use of information." *Long*, 692 F.3d at 194 (citing *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 292 (2d Cir. 2009) ("We emphasize that the focus, in assessing a claim under Exemption 6, must be solely upon what the requested information reveals, not upon what it might lead to." (internal quotation marks omitted))). In sum, while there may be "a public interest in the general topics at issue in the various documents" with respect to the OJJDP grant programs, the ACLU cannot identify "any public interest in the release of [ ] specific names," and thus "the privacy interest of the employees outweighs the public interest in disclosure." *Pinson v. DOJ*, 177 F. Supp. 3d 56, 84 (D.D.C. 2016).

The analysis is much the same for the withheld contact information like emails and telephone numbers. That individuals have a "privacy interest in their contact information" under FOIA is beyond dispute. *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 629 (S.D.N.Y. 2018); *see also Lewis v. DOJ*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011) ("Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (personal e-mail addresses). And in light of the lack of an articulable

public interest in disclosure, "in weighing even a *de minimis* privacy right," disclosure "would not be proper." *Seife*, 298 F. Supp. 3d at 629.

Accordingly, DOJ properly applied redactions of names and other identifying information as required by FOIA Exemption 6.

### 2. Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of six enumerated harms set forth in 5 U.S.C. § 552(b)(7)(A)-(F). "Exemption 7 uses the term 'law enforcement' to describe 'the act of enforcing the law, both civil and criminal.'" *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (citation and internal quotation marks omitted). Exemption 7(C) in particular shields "records or information compiled for law enforcement purposes," the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Similar to the analysis under Exemption 6, courts "must balance the public interest in disclosure against the privacy interest Congress intended the Exemption to protect." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citation omitted). However, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Id*. Indeed, the privacy interest at issue need only be "more than *de minimis*." *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992).

DOJ redacted the names and other personal identifying information of individuals who work for the grant applicant entities from records compiled for law enforcement purposes, specifically the funding and execution of the OJJDP-supported programs. Gaylord Decl. ¶ 13. This information was withheld for much the same reasons articulated above in the context of

Exemption 6. Given the sensitive nature of the subject matter at issue, the employees of the law enforcement agencies at issue have a privacy interest that is, at the least, more than *de minimis*. *See Associated Press*, 554 F.3d at 286 ("The privacy interest protected by Exemption 7(C) is an interest in 'avoiding disclosure of personal matters' and 'keeping personal facts away from the public eye.' An individual's privacy interest is particularly pronounced where disclosure could lead to embarrassment or retaliation.") (quoting *DOJ v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 762, 769 (1989)). In addition, under Exemption 7(C), a requestor must identify a "significant" public interest, such that "disclosure of redacted names and identifying information . . . would 'shed . . . additional light on the Government's conduct.'" *Id*. at 288 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991)). As described above, the disclosure of specific names in this context would add nothing to the information gained by the requestor. *See DiGirolamo v. DEA*, No. 15 Civ. 5737 (ALC), 2017 WL 4382097, at *4 (S.D.N.Y. Sept. 29, 2017) (explaining that given "law enforcement officers, government employees, and third-party individuals' interest in the nondisclosure of their identifying information," "the redaction of their identifying information . . . is a typical application of Exemption 7(C)") (citing *Grand Cent. Partnership*, 166 F.3d at 485). DOJ's assertion of Exemption 7(C) was therefore proper.

### 3. Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes," release of which "[1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To show that information is "compiled for

law enforcement purposes," the Government need only demonstrate a "nexus between the agency's activity . . . and its law enforcement duties." *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). The first clause of Exemption 7(E) provides categorical protection to information that would disclose law enforcement "techniques and procedures," without requiring any showing of harm as a result of disclosure. 5 U.S.C. § 552(b)(7)(E).[2] "[T]he qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'" *Allard K. Lowenstein Int'l Human Rights Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). DOJ properly applied Exemption 7(E) to several categories of law enforcement-related information, including sections of a narrative description provided by the Office of the Attorney General of Nevada about its operations related to fighting gang activity and recruitment and maps of areas targeted for specific law enforcement operations. Gaylord Decl. ¶ 15. To begin with, it is beyond dispute that the information in question, found in records submitted for the purpose of obtaining grant money for law enforcement operations and describing aspects of those law enforcement operations, was compiled for law enforcement purposes. *See Levinthal v. Federal Election Commission*, 219 F. Supp. 3d 1, 7–8 (D.D.C. 2016) (discussing requirement of a general "nexus" to law enforcement duties and explaining Exemption 7(E) material "do not have to be linked to a specific investigation") (citing *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002)).

---

[2] Notwithstanding the lack of need to make such a showing, courts have recognized that the risk of harm in revealing such techniques, which are "not generally known to the public," is well established. *Doherty v. DOJ*, 775 F.2d 49, 52 & n.4 (2d Cir. 1985); *see also Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014) (noting applicability where "the disclosure of additional details could reduce . . . effectiveness" of techniques) (citation omitted); *accord N.Y. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 771 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2011).

Moreover, even though it is not necessary to do so, DOJ's declarant has explained how disclosure of the information—which includes details about which geographic areas will be the focus of operations, how many police squads will be assigned to certain shifts, and intelligence about possible gang activity known by law enforcement—would reasonably be expected to lead to circumvention of the law by providing targets with valuable tactical information. Gaylord Decl. ¶ 16. Such information, which would "reveal sensitive strategic decisions made by" a law enforcement agency, including the agency's "level of focus on certain types of law enforcement or intelligence gathering efforts," falls well within Exemption 7(E)'s ambit. *Poitras v. U.S. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018); *see also Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 99 (S.D.N.Y. 2018) (upholding application of Exemption 7(E) to material that would reveal "strategic developmental planning and implementation mechanisms" with respect to specific initiative); *Jett v. FBI*, 139 F. Supp. 3d 352, 364 (D.D.C. 2015) (information revealing "sensitive investigative strategies" protected). Because this information was compiled for law enforcement purposes and its release would disclose law enforcement techniques and procedures, DOJ properly applied Exemption 7(E).

### C.  DOJ Properly Withheld Non-Responsive Records

The ACLU contends that DOJ improperly withheld information from otherwise responsive records on the basis of non-responsiveness, in contravention of *American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016) ("*AILA*"). That assertion, based on a misapprehension of the nature of DOJ's withholdings, which were made on a record-by-record basis fully consistent with *AILA*, is incorrect.

In *AILA*, the D.C. Circuit held that FOIA "does not provide for withholding responsive but non-exempt records or for redacting non-exempt information within responsive records," and instead "compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Id.* at 677. While observing that this principle raises "the antecedent question of what constitutes a distinct 'record' for FOIA purposes," a definition not provided by the statute itself, the court declined to provide a one-size-fits-all answer. *Id.* at 678 (citing 5 U.S.C. § 551). Instead, the court recognized that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request," and "m[ay] conceive of a 'record'" according to a "range of possible ways." *Id.* The court then cited previous guidance issued by the DOJ Office of Information Policy ("OIP") as a particular source of "considerations for agencies to take into account when determining whether it is appropriate to divide . . . a document into discrete 'records.'" *Id.*[3]

Taking their cue from the *AILA* court, numerous district courts have found that policy statements like OIP's "Guidance on Defining a 'Record' Under FOIA," ("2017 OIP Guidance") available at https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia (last visited Oct. 16, 2020), issued in response to *AILA*, "can be relied upon when determining what a record is." *Cause of Action Institute v. DOJ*, 453 F. Supp. 3d 368, 371 n.1 (D.D.C. 2020); *see also Judge Rotenberg Educational Center, Inc. v. FDA*, 376 F. Supp. 3d 47, 60 (D.D.C. 2019) (OIP guidance "updated in response to *AILA*" provides "benchmarks" that "inform th[e] analysis"). The 2017 OIP Guidance takes a logical and statutory language-based approach to defining a FOIA "record": relying on the definition of record contained in the Privacy Act,

---

[3] OIP's mission is to "encourage and oversee agency compliance with" FOIA and to assist federal agencies in "understanding the many substantive and procedural requirements of the FOIA." Office of Information Policy: About the Office, https://www.justice.gov/oip/about-office (last visited Oct. 16, 2010).

FOIA's sister statute, it looks to "the content of a document and the subject of the request" to identify each "item, collection, or grouping of information" that is discretely responsive within the document. *Cause of Action Institute*, 453 F. Supp. 3d at 371 (quoting OIP Guidance; 5 U.S.C. § 552a(a)(4)). Thus, a "'record' can potentially constitute an entire document, a single page of a multipage document, or an individual paragraph of a document," that is, some separable unit of information into which the document "can reasonably be broken." *Id*. This definition is consistent with *AILA*, which, while finding that a record may not be defined at "the level of an individual sentence within a paragraph within an email message," observed that agencies could, depending on the contours of a document and request, "conceive of an individual 'record' more narrowly" than on a document by document basis, particularly where a document "cover[s] multiple, unrelated topics." *AILA*, 830 F.3d at 679.[4]

Here, DOJ marked as non-responsive entire discrete sections of documents consisting of descriptions of wholly separate grant programs than the ones at issue in the ACLU's request, including grants operated by entirely different DOJ components, like the Bureau of Justice Assistance and the Office of Victims of Crime. *See* Gaylord Decl. ¶ 18. These discrete sections of the documents were properly treated as separate "records" within the meaning of AILA and the 2017 OIP Guidance. The non-responsive information bears no relation at all to the grants at issue, "nor are they necessary to provide context or helpful background information" for the

---

[4] The Second Circuit has not adopted the *AILA* standard, which is inconsistent with the approach of some courts in this District that have found withholdings within records on non-responsiveness grounds proper. *See, e.g.*, *Families for Freedom v. U.S. CBP*, 837 F. Supp. 2d 287, 298 (S.D.N.Y. 2011) (holding that "data may be redacted as non-responsive" within a record-unit); *see also Flores v. DOJ*, 391 F. Supp. 3d 353, 365 n.8 (S.D.N.Y. 2019) (acknowledging *AILA* but abstaining from explaining whether standard applied because non-responsive withholdings were of documents in full). In any event, the ACLU's reliance on *AILA* is unavailing, because the redactions at issue here do not involve withholdings of otherwise nonexempt information *within* a record, as described herein.

subject of Plaintiffs' request. *Cause of Action Institute*, 453 F. Supp. 3d at 375. For instance, one document at issue contains standalone sections of "questions and answers" relevant to different grants within each section. Gaylord Decl. ¶ 18. Courts have endorsed this commonsensical approach to identifying relevant groupings of responsive information as complying fully with *AILA*. *See Cause of Action Institute*, 453 F. Supp. 3d at 377 (holding that based on "structure of the document," DOJ properly characterized separate congressional questions sent to agency and responses thereto on different topics as distinct records because they were "discrete units that are easily distinguished from one another as distinct groupings of information"); *Shapiro v. CIA*, 247 F. Supp. 3d 53, 75 (D.D.C. 2017) (agency may "rely[ ] on its own knowledge of its documents and DOJ OIP guidance . . . 'to divide a document covering multiple, unrelated topics into discrete 'records.'"") (quoting *AILA*) (alteration omitted).

DOJ marked as non-responsive only that information which is unrelated to the ACLU's request and found in discrete and distinct groupings separate from responsive material, such that the agency considered them to be separate "records" under FOIA. DOJ therefore fully complied with the standard articulated in *AILA*. DOJ's non-responsiveness determinations should be upheld.

### D.  All Reasonably Segregable Portions of Records Were Produced

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). This provision does not require disclosure of records in which the non-exempt information that remains is "incomplete" or "meaningless." *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005). DOJ has satisfied the requirements of § 552(b)(9).

The agency declarant has explained that DOJ carefully reviewed responsive documents

on a line-by-line basis to determine whether all reasonably segregable portions were identified

and released, taking into account the nature of the records at issue. *See* Gaylord Decl. ¶ 19.

"Agencies are entitled to a presumption that they complied with the obligation to disclose

reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C.

Cir. 2007) (citation omitted). Here, because Plaintiffs offer no basis to rebut that presumption in

light of DOJ's explanation, the Court should find that all "reasonably segregable portion[s]" of

the responsive records have been provided to Plaintiffs. *See* 5 U.S.C. § 552(b).

## CONCLUSION

For the reasons stated above, DOJ's motion for summary judgment should be granted in

its entirety.

Dated:  New York, New York
        October 16, 2020

                                   Respectfully submitted,

                                   AUDREY STRAUSS
                                   Acting United States Attorney for the
                                   Southern District of New York
                                   *Counsel for Defendants*

                          By:      /s/ Stephen Cha-Kim
                                   STEPHEN CHA-KIM
                                   Assistant United States Attorney
                                   86 Chambers Street, Third Floor
                                   New York, New York 10007
                                   (212) 637-2768
                                   stephen.cha-kim@usdoj.gov

16