UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION
and AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,

                              Plaintiffs,

        - against -                        No. 19 Civ. 5483 (MKV)

DEPARTMENT OF JUSTICE and OFFICE
OF JUSTICE PROGRAMS,

                              Defendants.

## DECLARATION OF DANIEL GAYLORD

I, Daniel Gaylord, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a Government Information Specialist responsible for processing Freedom of Information Act ("FOIA") requests for the Office of Justice Programs ("OJP") at the United States Department of Justice ("DOJ"). I am responsible for processing and responding to FOIA requests seeking records from within the OJP in accordance with the mandates and exemptions of FOIA. I coordinate the search for documents with OJP bureaus and offices and determine whether records are responsive to FOIA requests and, if so, whether they can be released in accordance with the FOIA. I communicate with requesters and prepare the responses to the FOIA requests that are referred to OJP by other DOJ components and other federal agencies, and to requests that are submitted directly to OJP.

2.     FOIA requests are generally handled as follows: I review FOIA requests assigned to me for processing, determine which OJP bureau(s) or office(s) may maintain responsive documents, and communicate with those bureau(s) or office(s) to obtain

responsive documents. I then review the documents or information provided for responsiveness, apply any relevant FOIA exemptions, and prepare a response to the requester(s). In my capacity as a Government Information Specialist, I am a member of the staff of OJP's Office of the General Counsel ("OGC"). In handling a particular request, I may consult with the FOIA Officer and attorneys within OGC. In some instances, the FOIA Officer and OGC attorneys review documents provided by an OJP bureau or office to evaluate responsiveness and/or analyze relevant FOIA exemptions. OGC attorneys may also review responsive letters to FOIA requesters.

3. The statements I make in this declaration are based on my personal knowledge, my review of documents kept by OJP in the ordinary course of business, and documents and information provided to me by OJP employees in the course of their official duties.

4. I make this declaration in support of Defendants' motion for summary judgment in the above-captioned case. I am familiar with OJP's handling of the FOIA request at issue in this case (FOIA Request No. 19-00018).

5. By email and letter dated October 17, 2018, Plaintiffs submitted a request for:

- Any and all records submitted to OJJDP [Office of Juvenile Justice and Delinquency Prevention] as part of an application for grant funding through "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845.
- Any and all records submitted to OJJDP as part of an application for grant funding through "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
- Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-1384S, and any response provided by OJJDP or any other federal government agency or department.
- Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582, and any response provided by OJJDP or any other federal government agency or

department.
- Any and all records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-1384S.
- Any and all records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
- Any and all records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845.
- Any and all records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
- Any and all records related to the planned use by OJJDP or any other federal government agency or division of information obtained by grantees under "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14S82.
- Any and all records related to the source and budgeting of funds for "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.
- Any and all records related to the information relied upon and supporting the preference for a law enforcement and prosecutorial approach through "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582.

6. On October 23, 2018, the agency acknowledged the request via a letter emailed to Plaintiffs. In consultation with Plaintiffs, DOJ made interim productions of responsive records on August 7, 2019, August 9, 2019, November 11, 2019, January 15, 2020, February 15, 2020, and March 31, 2020. After further conferral with Plaintiffs, the agency reprocessed certain records and made additional productions on June 3, 2020, June 22, 2020, and October 12, 2020.

7. OJP has processed a total of 55,940 pages and produced 6,132 pages pursuant

to Plaintiffs' FOIA request. Of the produced pages, 6,125 pages were Bates-stamped pages, 1 page was an additional email processed regarding a question about a Nevada press release, and 6 pages consisted of an email from the office of Senator Tim Kaine regarding the status of a grant application.

8. Because Plaintiffs informed OJP via its counsel in a letter dated July 17, 2020, that Plaintiffs will not challenge the adequacy of OJP's search, this declaration will not address that subject.

9. By the same letter dated July 17, 2020, Plaintiffs requested a Vaughn index for 1,097 pages of OJP's production and waived receipt of a Vaughn index for the remainder of OJP's production. The agency provided a draft Vaughn index to Plaintiffs addressing statutory exemptions within 1,097 production pages that were flagged by Plaintiffs. In response to the draft Vaughn index, Plaintiffs informed OJP that they were waiving their challenge to the agency's application of Exemption 5 and a number of applications of Exemptions 4 and 6. The agency has revised its Vaughn index in response to Plaintiffs' waivers and after subsequent reprocessing of certain records, and the revised, final Vaughn index is attached hereto and incorporated by reference to this declaration.

10. For the records that remain at issue, OJP asserts withholdings under Exemptions 6, 7(C) and 7(E). Each of the challenged exemptions is addressed in turn below.

## Exemption 6

11. Exemption 6 protects from release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The agency followed this statutory standard by withholding such personnel, medical, and similar files, including:

- Names, positions, telephone numbers, and other personally identifying information of employees and contractors of grant applicants, including the Office of the Attorney General of Nevada, the Center for Crime and Justice Policy at the University of Nevada, the Bernalillo County Sheriff's Department, the Albuquerque Police Department, the Bernalillo County District Attorney's Office, and the Dallas County District Attorney's Office. This information is akin to information found in a personnel file and its release would constitute an unwarranted invasion of personal privacy. *See* Bates 1143, 1277-1278, 1281, 1523, 1563-1564, 1566, and 4310.

- Names, positions, job responsibilities (e.g., the areas over which a law enforcement employee has oversight), and educational history of individuals who are employed by law enforcement organizations (including the Clark County School District Police Department, the Dallas District Attorney's Office, the Greenville Police Department, and the Suffolk County Police Department) and other organizations (such as the Latin Chamber of Commerce of Nevada) This sensitive information is similar to information found in a personnel file and its disclosure would constitute a baseless invasion of personnel privacy. *See* Bates 1279-1280, 4119-4120, 4138-4139, and 5960.

- Names, addresses, positions, employment history, email addresses, phone numbers, education history, and professional awards found on individuals' resumes, release of which would be tantamount to identifying the persons to whom the information pertains. Some of these individuals have previously worked or currently work for law enforcement and judicial organizations, including the Jefferson County District

Attorney's Office, the Philadelphia Police Department, the 39th District Court of Roseville, Michigan, the Albuquerque Police Department, the Suffolk County Police Department, and the Dallas County District Attorney's Office. *See* Bates 1565-1567, 4117-4118, 4289-4291, 4293, 4423-4430.

- Name, email address, and phone number of the employee of a third-party government contractor corporation. *See* Bates 5961.

12. The information withheld under Exemption 6 identifies individuals who are employed by local and state law enforcement agencies who, particularly in light of the subject matter of the records at issue, will be vulnerable to harassment should their information be disclosed. The agency is not aware of any discernable public interest that weighs in favor of disclosure.

### Exemption 7(C)

13. Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" where the production of such law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The agency identified and withheld records protected from disclosure under Exemption 7(C), including:

- Personally identifying information of law enforcement personnel, who would execute the law enforcement aspects of a grant program, per the request of the Nevada Office of the Attorney General. The disclosure of this information, which was compiled for the law enforcement purpose of executing a law enforcement grant program, would constitute an unwarranted invasion of personal privacy and accordingly falls within the type of information protected by Exemption 7(C). *See*

      Bates 1279-1280.

- Name, address, phone number, email address, education, and professional experience information of law enforcement personnel submitted by various local law enforcement agencies, including the Bernalillo County Sheriff's Department, the Suffolk County Police Department, and the Dallas County District Attorney's Office. If disclosed, this information would constitute an unwarranted invasion of personal privacy. This information was compiled for a law enforcement purpose – applying for and executing a law enforcement program grant. See Bates 1565, 1567, 4117, 4119-20, 4138, 4293, 5956, and 5960.

14. Release of the information at issue would constitute an unwarranted invasion of privacy for much the same reasons described above in the context of Exemption 6, a result that Exemption 7(C) was meant to prevent. The agency is not aware of any public interest served by the disclosure of this identifying information.

### **Exemption 7(E)**

15. Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" where the production of such law enforcement records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The agency identified and withheld information protected from disclosure under Exemption 7(E), including:

- Information about how many police squads work in a particular division and the shifts worked by those squads, *see* Bates 1279; the location of where programs

under a law enforcement grant were planned to be conducted and the characteristics of individuals that the Nevada OAG hoped to identify as participants in the grant program, *see* Bates 1280-1281; a description of its strategy and plan for disrupting a criminal gang organization, including the identity of entities that the Nevada OAG saw as stakeholders in its plan, *see* Bates 1264-1265, 1267-1271, 1282-1283; intelligence information regarding a possible attack by a criminal gang, the location of the possible attack, and related information, *see* Bates 1266 and 1294; and maps of targeted areas where law enforcement entities sought to conduct gang suppression operations pursuant to a law enforcement grant, *see* Bates 1609, 4292, 4294, and 4307.

16. The information withheld under Exemption 7(E) reflects techniques and procedures for law enforcement investigations, and disclosure could reasonably create a risk of circumvention of the law by revealing strategic decisions related to prosecution of gang activity. For instance, the information in these records reveal the extent and location of law enforcement operations. If criminals know when and where law enforcement is going to enforce the law, it will be easier to circumvent enforcement operations. The agency consulted with law enforcement entities and these entities indicated the information noted above was law enforcement sensitive information that disclosed law enforcement techniques and procedures.

## Non-Responsive Records

17. In the course of processing records for Plaintiffs, the agency identified several records that were not responsive to FOIA Request No. 19-00018. These discrete records were adjacent to responsive records in the digital files processed for Plaintiffs' FOIA request

but were themselves not responsive to the request. These non-responsive records were not processed in the interest of promoting efficiency and focusing agency time and efforts on processing only records that were responsive to Plaintiffs' request. In marking records as "non-responsive," the agency took into account the Department of Justice's Office of Information Policy guidance on defining a "record" under FOIA (available at https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia) and the holding in *American Immigration Lawyers Association* v. *EOIR*, 830 F.3d 667 (D.C. Cir. 2016). Consistent with this authority, the agency looked to the Privacy Act (the companion statute to the FOIA), which defines a "record" as "any item, collection, or grouping of information." 5 U.S.C. § 552a(a)(4).

18. For Plaintiffs' request, the agency marked as non-responsive records that were discrete items, collections, or groupings of information that were unrelated to the subject of Plaintiff's FOIA request. The records that were withheld as non-responsive on this basis were as follows:

- Information about different OJP grant programs, including programs funded by Bureau of Justice Assistance and the Office of Victims of Crime. These other programs are unrelated to the gang suppression programs and non-responsive to Plaintiffs' FOIA request. A document included headings for different grant programs and then questions and answers about the program indicated in the heading. The information is delineated and grouped according to the discrete grant programs. The information in these separate records is not related to the grant programs at issue in Plaintiffs' request and is not intertwined with such information; that information is located in its own discrete sections under different headings. *See*

Bates 4447-4449.

- Similar to the document discussed immediately above, the pages contained at Bates 4466-4469 include information about distinct OJP grant programs grouped in discrete sections. Each grouping that discusses a program unrelated to the gang suppression programs was treated as a separate record and marked as non-responsive. Bates 4471-4475 are part of the same document and include grouped items of information about grant programs that are unrelated to the gang suppression at issue in Plaintiffs' FOIA request. These distinct groupings were also treated as separate records and marked non-responsive.

### Segregation of Non-Exempt Information

19.     The agency carefully and extensively examined the responsive records and determined that there is no further reasonably segregable information to be released pursuant to Plaintiffs' FOIA request. OJP thoroughly reviewed each of the records discussed above, and withheld from disclosure only that information which was eligible for withholding under an applicable FOIA statutory exemption. OJP conducted a line-by-line review of all of the records and released any portions that were not protected by an applicable FOIA exemption, at times redacting only portions of sentences or paragraphs within e-mails disclosed to Plaintiffs. All reasonably segregable, non-exempt information from the records at issue in this case has been disclosed to Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of October, 2020.

*Daniel Gaylord*

Daniel Gaylord