# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION;
and AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,

$\qquad$ *Plaintiffs*

v.

OFFICE OF JUSTICE PROGRAMS, and
U.S. DEPARTMENT OF JUSTICE,

$\qquad$ *Defendants.*

Case No. 19-cv-5483 (MKV)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT ....................................................................................................................4

   I.   Legal Framework and Standard of Review .....................................................4

   II.   OJP has not justified withholdings under Exemptions 6 ................................5

   III.   OJP has not justified withholdings under Exemptions 7 ...............................9

       a.   The withheld records were not compiled for law enforcement purposes. .................10

       b.   OJP has not justified withholdings under Exemption 7(C). ....................................13

       c.   OJP has not justified withholdings under Exemption 7(E)......................................16

          i.   The Nevada Office of the Attorney General's Grant Application.......................17

          ii.   Bernalillo and Dallas Application Withholdings ...............................................20

CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Adelante Alabama Worker Center v. U.S. Department of Homeland Security*,
    376 F. Supp. 3d 345 (S.D.N.Y. 2019) ...........................................................................6

*Allard K. Lowenstein International Human Rights Project v. Department of Homeland Security*,
    626 F.3d 678 (2d Cir. 2010)..............................................................................9, 16

*American Civil Liberties Union v. Department of Homeland Security*,
    243 F. Supp. 3d 393 (S.D.N.Y. 2017) ....................................................................passim

*American Civil Liberties Union v. Department of Justice*,
    No. 15 CIV. 1954 (CM), 2016 WL 8259331 (S.D.N.Y. Aug. 8, 2016)..................................11

*American Civil Liberties Union v. U.S. Department of Justice*,
    229 F. Supp. 3d 259 (S.D.N.Y. 2017) ....................................................................4

*Associated Press v. U.S. Department of Defense*,
    410 F. Supp. 2d 147 (S.D.N.Y. 2006) ...........................................................5, 6, 7

*Associated Press v. U.S. Department of Defense*,
    554 F.3d 274 (2d Cir. 2009).............................................................................4, 14

*Brennan Center for Justice at New York University School of Law v. Department of Homeland Security*,
    331 F. Supp. 3d 74 (S.D.N.Y. 2018) ....................................................... 10, 12, 13

*Carney v. U.S. Department of Justice*,
    19 F.3d 807 (2d Cir. 1994)...............................................................................4, 12

*Cook v. National Archives & Records Administration*,
    758 F.3d 168 (2d Cir. 2014)..............................................................................6

*Core v. U.S. Postal Service*,
    730 F.2d 946 (4th Cir. 1984)...........................................................................8, 9

*Cunningham v. U.S. Department of Justice*,
    40 F. Supp. 3d 71 (D.D.C. 2014) .......................................................................12

*Department of Air Force v. Rose*,
    425 U.S. 352 (1976) ........................................................................................4

*Detention Watch Network v. U.S. Immigration & Customs Enforcement*,
    215 F. Supp. 3d 256 (S.D.N.Y. 2016) ...................................................................11

*Doherty v. U.S. Department of Justice*,
    775 F.2d 49 (2d Cir. 1985)...........................................................................14, 16

*Families for Freedom v. U.S. Customs & Border Protection*,
    797 F. Supp. 2d 375 (S.D.N.Y. 2011) ....................................................................passim

*Federal Labor Relations Authority v. U.S. Department of Veterans Affairs*,
    958 F.2d 503 (2d Cir. 1992)..............................................................................6

*Ferguson v. Federal Bureau Investigation*,
    957 F.2d 1059 (2d Cir. 1992)...........................................................................10

*Garcia v. U.S. Department of Justice, Office of Information & Privacy*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ...................................................................14

*Jefferson v. Department of Justice, Office of Professional Responsibility*,
    284 F.3d 172 (D.C. Cir. 2002) ........................................................................ 4, 11, 12

*John Doe Agency v. John Doe Corporation*,
    493 U.S. 146 (1989). ................................................................................................. 14

*Judicial Watch, Inc. v. Export-Import Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................................ 8, 9

*Knight First Amendment Institute at Columbia University v. U.S. Department of Homeland Security*,
    407 F. Supp. 3d 334 (S.D.N.Y. 2019) ............................................................... passim

*Lamont v. Department of Justice*,
    475 F. Supp. 761 (S.D.N.Y. 1979) .................................................................. 10, 13

*Larson v. Department of State*,
    565 F.3d 857 (D.C. Cir. 2009) .................................................................................. 4

*Long v. Immigration and Customs Enforcement*,
    149 F. Supp. 3d 39 (D.D.C. 2015) ........................................................................ 20

*Long v. Office of Personnel Management*,
    692 F.3d 185 (2d Cir. 2012)...................................................................................... 6

*Malizia v. U.S. Department of Justice*,
    519 F. Supp. 338 (S.D.N.Y. 1981) ................................................................... 10, 14

*McGrady v. Mabus*,
    635 F. Supp. 2d 6 (D.D.C. 2009) .............................................................................. 7

*National Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement Agency*,
    811 F. Supp. 2d 713 (S.D.N.Y. 2011) .................................................................... 15

*New Orleans Workers' Center for Racial Justice v. U.S. Immigration & Customs Enforcement*,
    373 F. Supp. 3d 16 (D.D.C. 2019) .................................................................... 13, 17

*Ortiz v. U.S. Department of Health and Human Services*,
    70 F.3d 729 (2d Cir.1995).......................................................................................11

*Pratt v. Webster*,
    673 F. 2d 408 (D.C. Cir. 1982) ..............................................................................11

*Roth v. U.S. Department of Justice*,
    642 F.3d 1161 (D.C. Cir. 2011) ..............................................................................11

*Seife v. U.S. Department of State*,
    298 F. Supp. 3d 592 (S.D.N.Y. 2018) ................................................................. 6, 8

*Staehr v. Hartford Financial Services Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008)...................................................................................... 9

*Tax Analysts v. Internal Revenue Service*,
    294 F.3d 71 (D.C. Cir. 2002) ..................................................................................11

*U.S. Department of Justice v. Reporters Committee*,
    489 U.S. 749 (1989) ................................................................................................ 14

*Washington Post Company v. U.S. Department of Health & Human Services*,
    690 F.2d 252 (D.C. Cir. 1982) ..................................................................................7

*White Plains Housing Authority v. Getty Properties Corporation*,
    No. 13-CV-6282 NSR, 2014 WL 7183991 (S.D.N.Y. Dec. 16, 2014) ...................................9
*Wilner v. National Security Agency*,
    592 F.3d 60 (2d Cir. 2009)...........................................................................................4, 7
*Wood v. F.B.I.*,
    432 F.3d 78 (2d Cir. 2005) ........................................................................................1, 5, 6

## STATUTES

34 U.S.C. § 10102..............................................................................................................12
5 U.S.C. § 552......................................................................................................................1
5 U.S.C. § 552(a)(4)(B)........................................................................................................5
5 U.S.C. § 552(b)(6)..............................................................................................................5
5 U.S.C. § 552(b)(7)...........................................................................................................10
5 U.S.C. § 552(b)(7)(C)...................................................................................................9, 14
5 U.S.C. § 552(b)(7)(E)...................................................................................................9, 16

## OTHER AUTHORITIES

Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act
    (1975), *reprinted in* Freedom of Information Act & Amendments of 1974 (P.L. 93-502)
    Source Book: Legislative History, Texts & Other Documents, Joint Committee Print, 94th
    Cong., 1st Sess. 516 (1975).................................................................................................10

*CCSDPD Organizational Chart*, Clark County School District, https://ccsd.net/resources/police-
    services/ccsdpd-orgchart-19-20.pdf (last visited Oct. 29, 2020) ....................................15, 18

S.Rep. No. 1200, 93d Cong., 2d Sess.,
    *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267 ........................................................14

## RULES

Federal Rules of Evidence 201 ...........................................................................................9

Plaintiffs, the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, the "ACLU"), by and through their attorneys, respectfully submit this memorandum of law in support of their Cross-Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment, ECF 46, in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## INTRODUCTION

This litigation concerns a Freedom of Information Act ("FOIA") request for records concerning two multimillion-dollar federal grant programs targeting unaccompanied immigrant children. Plaintiffs and the public have an interest in understanding how these federal funds will be spent, and how federal government programs impact unaccompanied immigrant children and their communities.

Plaintiffs seek records from four successful grant applications. The Department of Justice Office of Justice Programs ("OJP") has withheld numerous responsive records asserting that the records relate to sensitive law enforcement activities, or would reveal individuals' private, personal information. However, the agency provides no more than speculative and conclusory justifications for its withholdings. In fact, the context within which the withheld information appears indicates that there are no applicable exemptions to FOIA's requirement of disclosure, and that the public has a strong interest in the information, which sheds light on "what their government is up to." *Wood v. F.B.I.*, 432 F.3d 78, 88 (2d Cir. 2005).

The information OJP claims is exempt from disclosure because it implicates individuals' personal privacy encompasses information about the qualifications and job duties of those in charge of program implementation. OJP has not demonstrated a real harm to individuals that would result from release of this information. Any minimal personal interest in the information is

outweighed by the strong public interest in understanding how the government approaches the implementation of a federal grant program.

Additionally, although OJP relies on FOIA's law enforcement exemption, the withheld records are contained in grant applications and do not involve the types of investigatory files connected with the enforcement of a federal law that would justify withholding under Exemption 7. Rather, the activities described in grant applications include various forms of community collaboration and engagement. To the extent some grant applications also reference increased surveillance and intelligence gathering, these activities do not relate to specific investigations and amount to no more than a generalized effort to monitor a large community. *See Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 334, 351–52 (S.D.N.Y. 2019).

OJP has not met its burden to withhold the records at issue. To the contrary, the withheld records are exactly the type that would shine a light on the workings of federal government and for which FOIA is intended to facilitate disclosure.

## STATEMENT OF FACTS

On October 17, 2018, Plaintiffs filed a FOIA request with OJP seeking records related to two multimillion -dollar grant programs administered by its program office, the Office of Juvenile Justice Delinquency and Prevention ("OJJDP"): "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach to Address Gang Recruitment of Unaccompanied Alien Children" ("Gang UAC Program") and "OJJDP FY 2018 Gang Suppression Planning Grants Program" ("Gang Suppression Planning Program"). Compl., ECF 1 at ¶¶ 25–27; Hinger Decl. ¶ 2. OJP provided an acknowledgement of receipt on October 23, 2018, but thereafter

failed to produce responsive documents or otherwise respond in substance. ECF 1 at 28–33, Hinger Decl. ¶¶ 3-5.

On June 19, 2019, Plaintiffs filed this action. ECF 1. Thereafter, OJP began to review and process records, and the Parties continued to negotiate regarding the scope of the request and the applicability of FOIA exemptions. *See* Status Letters to the Court, ECF 26, 28, 29, 31, 33, 36, and 40. Plaintiffs agreed to substantially narrow their request to documents produced after June 28, 2018, ECF 29, and have further waived challenges to numerous withheld records. Hinger Decl. ¶ 9. On October 2, 2020, the agency provided a draft Vaughn Index. Hinger Decl. ¶ 10. Plaintiffs agreed to waive challenges to an additional number of records following review of the draft Vaughn Index. *Id.*

Upon review of the final Vaughn Index and additional material filed with the agency's Motion for Summary Judgement, the Parties engaged in additional negotiation resolving any claims regarding certain documents. Hinger Decl. ¶ 12 (OJP-5956 & 5960 are no longer in dispute). Plaintiffs also waived challenges to withholdings under Exemption 6 and 7(C) contained in previously reprocessed documents. *Id. at* ¶ 13; s*ee also* Vaughn Index, ECF 48-1 (OJP-1143; 1523; 4423-4430; 5961). Further, Plaintiffs do not contest the withholding of certain records as non-responsive. Hinger Decl. ¶ 13; *see also* ECF 48-1 (OJP-4447–48; 4449; 4466–69; 4471–75).

The remaining contested issues involve withholdings OJP argues are justified under FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

**ARGUMENT**

## I. Legal Framework and Standard of Review

The purpose of FOIA is "to facilitate public access to Government documents" and "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, "to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

To satisfy its burden at summary judgment, the agency must submit affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009). "[C]onclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not, standing alone, carry the government's burden." *ACLU v. U.S. Dep't of Justice*, 229 F. Supp. 3d 259, 264 (S.D.N.Y. 2017) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009)); *see also Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176 (D.C. Cir. 2002) ("The court must determine, from inspection of the agency affidavits submitted, whether the agency's explanation was full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." (internal quotation marks and citation omitted)). The applicability of an exemption is reviewed

*de novo* and the Court may conduct in camera inspection of documents to determine whether the material can be withheld. 5 U.S.C. § 552(a)(4)(B).

## II.      OJP has not justified withholdings under Exemptions 6.

Plaintiffs have not sought disclosure of individual names, phone numbers or email addresses, *see* Hinger Decl. ¶ 9, and do not seek such information here. Plaintiffs do seek disclosure of information regarding the responsibilities, professional backgrounds, and education experiences of those in charge of implementing federal grant programs. Hinger Decl. Ex. 1 (OJP-1277–78; 1279, 1280, 1281); Ex. 2 (OJP-1563–64, 1565, 1566, 1567); Ex. 3 (OJP-4117–18, 4119–20); Ex. 4 (OJP-4138–39, 4289–91, 4293, 4310).

Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To withhold documents under Exemption 6, the government must show "(i) that the information is contained in personnel, medical or 'similar files,' (ii) that disclosure of the information would constitute an 'invasion of personal privacy,' and (iii) that such invasion is 'clearly unwarranted.'" *Associated Press v. U.S. Dep't of Def.*, 410 F. Supp. 2d 147, 155 (S.D.N.Y. 2006). The Court must "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure . . . would constitute a 'clearly unwarranted invasion of personal privacy.'" *Wood*, 432 F.3d at 86 (internal citations omitted).

"The purpose of Exemption 6 is to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 388 (S.D.N.Y. 2011) (quoting *Wood*, 432 F.3d at 86). Consistent with this purpose, for Exemption 6 to apply,

there must be "a substantial, as opposed to *de minimis*," privacy interest at issue. *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175–76 (2d Cir. 2014) (quoting *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012)); *see also Fed. Labor Rel. Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992) (noting that "the competing interests at stake must be balanced" only "once a more than *de minimis* privacy interest is implicated"); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 624 (S.D.N.Y. 2018).

While "the bar is low . . . to *trigger* the application of the disclosure balancing test," more than a minimal privacy interest is required to outweigh a public interest in disclosure, and "[t]he analysis is context specific." *Long*, 692 F.3d at 191 (internal quotation marks and citation omitted) (emphasis added). Whether a "significant privacy interest" is at stake "depends on the consequences likely to ensue from disclosure," *Wood,* 432 F.3d at 88, and the agency must "show that the threat to employees' privacy is real rather than speculative." *Seife*, 298 F. Supp. 3d at 625 (internal citations omitted); *see also Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 367 (S.D.N.Y. 2019) (A "mere possibility that the release of information could potentially lead to harassment is not evidence of a 'real' threat of harassment."); *Associated Press*, 410 F. Supp. 2d at 157 ("conclusory and grossly speculative assertions" of possible embarrassment and retaliation insufficient to justify withholdings under Exemption 6). In balancing the interests at stake, a public interest exists where "the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Wood*, 432 F.3d at 88 (internal citation omitted).

OJP has not met its burden of establishing that Exemption 6 applies to the withheld information. First, the agency has withheld not only "names, phone numbers, and email addresses," Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF 47 at 6, but also "other

personally identifying information," "positions, job responsibilities (e.g. the areas over which a law enforcement employee has oversight)," "educational history," "employment history" and "professional awards." Decl. of Daniel Gaylord, ECF 48 at 5. OJP's identification of "other personally identifying information" is too vague to ascertain even the types of information withheld and fails to meet the requirements of FOIA. *See Wilner*, 592 F.3d at 73. OJP provides no reason to believe that the other more specific types of withheld information, such as employment history and job responsibilities, present a personal privacy interest covered by Exemption 6. They do not. *See, e.g.*, *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982) (disclosure of federal contractor employment history "would be only a minimal invasion of privacy"). This is particularly true when the information is divorced from individual name or contact information. *See McGrady v. Mabus*, 635 F. Supp. 2d 6, 20 (D.D.C. 2009), *as amended* (Aug. 25, 2009) ("In the absence of any 'personal identifiers,' it is highly unlikely—if not impossible—that disclosure [of the results of performance evaluations] would threaten an individual's privacy interests.").

Second, OJP has not established that there is a real threat of harm. Instead, the agency's assertion that "in light of the subject matter of the records at issue," individuals "will be vulnerable to harassment should their information be disclosed," ECF 48 at ¶ 11–12, is "conclusory" and "speculative," *Associated Press*, 410 F. Supp. 2d at 157. The agency's legal argument that because the grant subject matter involves "the sensitive topic of law enforcement within immigrant communities," individuals associated with the grant program face a risk of "harassment or attack" is no less conclusory. ECF 47 at 14. The agency fails to provide any explanation for why the general practice of "law enforcement within immigrant communities,"

as opposed to law enforcement in any other community, is a particularly sensitive matter that would subject individuals to harassment or attack.

Moreover, the grant applications at issue describe programs involving community partnerships, outreach, and engagement with the public. Hinger Decl. Ex. 1 (OJP-1269 and 1279), Ex. 2 (OJP-1575), Ex. 3 (OJP-4135). Individuals involved in implementing programs involving community engagement are likely known to the public, and the fact of their involvement and professional background would not cause embarrassment. In these circumstances, OJP cannot establish a real threat to personal privacy. *See Seife*, 298 F. Supp. 3d at 625 (where individuals held "positions that are known, or knowable, to the general public" it was "not apparent" how disclosure would lead to "unwarranted harassment").

In contrast, the public has a strong interest in the withheld records. Information regarding the responsibilities and qualifications selected for leadership in the implementation of federal grant programs sheds light on the workings of the federal government. *See, e.g.*, *Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984) (holding resumes of successful applicants for government positions not covered by Exemption 6 and reasoning that "the public has an interest in the competence of people the Service employs and in its adherence to regulations governing hiring"). In particular, knowledge of this information allows the public to better understand how the federal government will approach the purpose, methods, and aims of a federal grant program. *See Seife*, 298 F. Supp. 3d at 627 (Exemption 6 did not apply where information would "likely reveal what the government is 'up to' when it describes . . . the nature of the work performed.").

OJP relies on *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000), to justify its withholdings. *See* ECF 47 at 6. But the reasoning of *Judicial Watch* supports disclosure in this case. The court in *Judicial Watch* found that there was not a public interest in

the resumes of executives applying for insurance. 108 F. Supp. 2d at 37. In contrast, the court

found that "the public has an interest in knowing the qualifications of the individuals who run

businesses that the [Federal Import-Export] Bank approves for insurance" and "in ensuring the

Bank adheres to its regulations regarding who is approved for insurance." *Id.* at 37 (citing *Core*,

730 F.2d at 948). Similarly, the public has an interest in the resumes here, which pertain to

successful applicants who have been awarded government grants.[1]

OJP has not met its burden to demonstrate that disclosure would be "clearly

unwarranted" under Exemption 6. Instead, when balancing private against public interests, it is

clear that FOIA requires disclosure.

### III.    OJP has not justified withholdings under Exemptions 7.

FOIA Exemption 7 exempts from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information" would, as relevant here, "reasonably be expected to constitute an unwarranted

invasion of personal privacy," or "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(C), (E); *see also Allard K. Lowenstein Int'l*

*Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

---

[1] OJJDP has awarded grants to the Nevada Office of the Attorney General in Nevada, Dallas County in Texas, Suffolk County in New York, and the Bernalillo County Sheriff's Department in New Mexico. Awards Made for Solicitation as of June 11, 2019, OJJDP, *avaiflable at* https://external.ojp.usdoj.gov/SelectorServer/awards/pdf/solicitation/OJJDP%20FY%2018%20Gang%20Suppressio n:%20A%20Law%20Enforcement%20and%20Prosecutorial%20Approach%20to%20Address%20Gang%20Recruit ment%20of%20Unaccompanied%20Alien%20Children. The Court can "take judicial notice of information readily accessible in the public domain, the significance of which is not subject to reasonable dispute." *White Plains Hous. Auth. v. Getty Properties Corp.*, No. 13-CV-6282 NSR, 2014 WL 7183991, at *2 (S.D.N.Y. Dec. 16, 2014) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008); Fed. R. of Evid. 201).

### a. The withheld records were not compiled for law enforcement purposes.

OJP has not established the threshold requirement of Exemption 7, that the withheld records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see also Ferguson v. F.B.I.*, 957 F.2d 1059, 1070 (2d Cir. 1992) ("[T]he government has the burden of proving the existence of a compilation of information for the purpose of law enforcement."). Consistent with the scope of the Office of Justice Programs' statutory authority, the records at issue were compiled in the course of OJP's administration of a federal grant program with only a generalized relationship to law enforcement. In these circumstances, Exemption 7 is wholly inapplicable.

"To show that particular documents qualify as 'records or information compiled for law enforcement purposes,' an agency must establish a rational nexus between the agency's activity in compiling the documents and 'its law enforcement duties.'" *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 97 (S.D.N.Y. 2018) (internal citation omitted). Acting with a law enforcement purpose means "preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations." *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 773 (S.D.N.Y. 1979) (quoting Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act (1975)[2]); *see also Malizia v. U.S. Dep't of Justice*, 519 F. Supp. 338, 347 (S.D.N.Y. 1981) ("'Law enforcement' includes the detection and punishment of law violation.") (quoting same Attorney General's Memorandum).

Courts consider the applicability of Exemption 7 with "'more exacting scrutiny'" when its protections are invoked by "agencies whose principal function is not law enforcement." *ACLU v. Dep't of Justice*, No. 15 CIV. 1954 (CM), 2016 WL 8259331, at *17 (S.D.N.Y. Aug. 8,

---

[2] *Reprinted in* Freedom of Information Act & Amendments of 1974 (P.L. 93-502) Source Book: Legislative History, Texts & Other Documents, Joint Committee Print, 94th Cong., 1st Sess. 516 (1975).

2016), *vacated on other grounds*, 894 F.3d 490 (2d Cir. 2018) (quoting *Pratt v. Webster*, 673 F. 2d 408, 416 (D.C. Cir. 1982)). In these circumstances, courts will "scrutinize with some skepticism the particular purpose claimed." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

Even where an agency's primary law enforcement function is clear, not all agency records constitute law enforcement records. *See, e.g.*, *Families for Freedom*, 797 F. Supp. 2d at 397 ("While ICE is unquestionably a federal law enforcement agency, not every document produced by ICE personnel has been 'compiled for law enforcement purposes' under FOIA."); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("FBI records are not law enforcement records under FOIA simply by virtue of the function that the FBI serves") (internal quotations and brackets omitted). Rather, Courts apply Exemption 7 only to "investigatory files," in other words, "records that pertain to specific investigations conducted by agencies, whether internal or external, and whether created or collected by the agency." *Families for Freedom.*, 797 F. Supp. 2d at 397 (citing *Ortiz v. U.S. Dep't of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir.1995)); *see also Det. Watch Network v. U.S. Immigration & Customs Enf't*, 215 F. Supp. 3d 256, 267 (S.D.N.Y. 2016) (holding Exemption 7 did not apply where "the Government d[id] not even attempt to show what investigations or prosecutions [were] occurring"); *Jefferson*, 284 F.3d at 176–77 ("In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." (internal quotation marks and citations omitted)).

OJP—whose principle function is to provide funding and resources to state and local entities—has *no* law enforcement duties and the Court should approach its claimed law

enforcement exemptions with a high degree of skepticism. The statutorily conferred powers and functions of OJP do not include the power to enforce civil or criminal laws. *See* 34 U.S.C. § 10102. Rather, as OJP has itself averred in the context of FOIA litigation, OJP "does not directly carry out law enforcement and justice activities" and instead works to "provide information, training, coordination, and innovative strategies and approaches" to address "crime-related challenges confronting the justice system." *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 81, 85 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). Where OJP has no "law enforcement duties," there is no grounding for the Court to further consider whether a "nexus" exists to satisfy Exemption 7's threshold requirements. *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 97 (S.D.N.Y. 2018).

Even assuming that OJP has law enforcement duties, which it does not, the government has not met its burden of establishing that the withheld records have a rational nexus to law enforcement. OJP claims that its law enforcement purpose is "the funding and execution of the OJJDP-supported programs," ECF 47 at 9, and separately, that "it is beyond dispute" that information "submitted for the purpose of obtaining grant money for law enforcement operations and describing aspects of those law enforcement operations, was compiled for law enforcement purposes." ECF 47 at 11.[3] These vague and conclusory assertions fail to provide the necessary "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812; *see also Jefferson*, 284 F.3d at 178 (Exemption 7 inapplicable where agency declaration provided a "bare assertion" that records were compiled for law enforcement purposes). Although OJP recites the term "law enforcement," the interests and activities

---

[3] *See also* Gaylord Decl., ECF 48 at 6 (information "was compiled for the law enforcement purpose of executing a law enforcement grant program"); *id.* at 7 ("This information was compiled for a law enforcement purpose – applying for and executing a law enforcement program grant.").

described involve the administration of programs, not "preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations." *Lamont*, 475 F. Supp. at 773 (internal citation omitted). The records at issue are grant applications, not investigatory files. The agency does not identify any federal law the government is engaged in enforcing. That grant applications may "in a general sense . . . pertain to law enforcement," does not establish that they are investigatory and compiled for law enforcement purposes. *Families for Freedom*, 797 F. Supp. 2d at 397; *see also New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigration & Customs Enf't*, 373 F. Supp. 3d 16, 56 (D.D.C. 2019) (Exemption 7 not applicable where agency did not "address the specific law enforcement purpose of the withheld documents" and instead provided only a "blanket assertion that all the information withheld 'relates to investigations of non-U.S. individuals who may be illegally present in the United States, including records of interviews, arrest, booking, detention, removal, other related investigations, etc.'" (internal alteration and citation omitted)).

Where, as here, the threshold showing that the records are compiled for law enforcement purposes has not been met, Exemptions 7(C) and 7(E) are wholly inapplicable. *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 97; *see also Families for Freedom*, 797 F. Supp. 2d at 397 ("the two documents are not exempt under 7(C) because the documents do not constitute 'records or information compiled for law enforcement purposes.'").

**b. OJP has not justified withholdings under Exemption 7(C).**

Even if the records were compiled for law enforcement purposes, Exemption 7(C) would not apply to the withheld documents. Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The exemption is tied to

law enforcement investigatory functions and covers "the identities of investigative agents and of individuals under investigation or of investigatory interest." *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 n.2 (2d Cir. 1985) (citing S.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267, 6291). It is intended to protect against "harassment and interfere[nce] with the performance of the law enforcement officer's duties," *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 373 (S.D.N.Y. 2002), and requires a court to "balance the public interest in disclosure against the privacy interest Congress intended the Exemption to protect." *Associated Press*, 554 F.3d at 284 (quoting *U.S. Dep't of Justice v. Reporters Comm.,* 489 U.S. 749, 776 (1989)) (internal brackets omitted). "[Exemption 7] require[s] consideration of the nature of each particular document as to which exemption was claimed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 157 (1989).

As with its assertions of Exemption 6, OJP relies on Exemption 7(C) to withhold portions of information contained in resumes and grant application program narratives. Here again, Plaintiffs do not seek the names, phone numbers, or email addresses of individual law enforcement officers. However, OJP has withheld a broader range of information.

Assertions of 7(C) exemptions can be verified by the size and context of the deletion. *See Malizia,* 519 F. Supp. at 349. Taking each claimed exemption in turn, OJP first asserts Exemption 7(C) to withhold what it describes in general terms as "[p]ersonally identifying information of law enforcement personnel," within the grant application of the Nevada Office of the Attorney General. ECF 48 at 6–7 (discussing OJP-1279–80). Context suggests that the redacted information constitutes a description of the structure of the Clark County School District Police Department. The paragraph including the redacted material begins "[t]he structure of CCSDPD includes . . . ." Hinger Decl. Ex. 1 (OJP-1279). There is no indication that a

description of the CCSDPD structure was compiled in relation to a law enforcement investigation as opposed to general organizational administration. Further, it appears likely that this information is already available to the public and that CCSDPD does not hold a privacy interest in the information.[4]

The context of other redactions also suggests that the withheld information was not compiled in relation to an investigation. First, the sentence containing one claimed exemption reads: "In 2017, the SGIC hosted a national MS-13 summit . . . in which [redactions] Executive Director, Joseph J. Kolb." *See* Hinger Decl. Ex. 1 (OJP-1280). Similarly, OJP has redacted objectives and qualifications from resumes, Hinger Decl. Ex. 3 (OJP-4117), Ex. 4 (OJP-4293), and further withholds entire pages without specific justification. Hinger Decl. Ex. 3 (OJP-4119–20). There is no indication that this information relates to a law enforcement investigatory purpose or that the information if revealed would subject an individual law enforcement officer to harassment in their law enforcement duties.

In contrast to the lack of a specific articulated need to withhold information under Exemption 7(C), there is a public interest in disclosure. As set out in relation to Exemption 6, information about the qualifications of those involved in the implementation of a federal grant program are relevant to the public interest of understanding how OJP views the desired qualifications of grantees, and how the federal programs will be implemented. *Cf. Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 748 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) ("The disclosure of the places of work and titles but not the names of subordinate staff will provide plaintiffs with a greater ability to ascertain the degree to which documents reflect the views of the agency versus those of

---

[4] *See CCSDPD Organizational Chart*, Clark Cty. Sch. Dist., https://ccsd.net/resources/police-services/ccsdpd-orgchart-19-20.pdf (last visited Oct. 29, 2020).

individual agency employees . . . without exposing lower level federal employees to the risk of harassment or annoyance.").

OJP has not shown that the records were compiled in relation to an investigation, or that disclosure would lead to harassment of officers in performance of their law enforcement duties. In contrast, the public has an interest in knowing information that pertains to the operation of a federal grant program, including the qualifications associated with leadership. FOIA requires disclosure in these circumstances.

### c.  OJP has not justified withholdings under Exemption 7(E).

Even if the withheld documents constituted law enforcement records, which they do not, the records do not constitute "techniques and procedures for law enforcement investigations or prosecutions," or "guidelines for law enforcement investigations or prosecutions" the disclosure of which "could reasonably be expected to risk circumvention of the law," warranting protection under Exemption 7(E). 5 U.S.C. § 552(b)(7)(E). The phrase "'techniques and procedures' . . . refers to how law enforcement officials go about investigating a crime," while "guidelines," meaning "an indication or outline of future policy or conduct," refers to "resource allocation." *Allard K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 682. A "technique" is "a technical method of accomplishing a desired aim" and a "procedure" is "a particular way of doing or of going about the accomplishment of something." *Id.* "Section 7(E) requires that the material being withheld truly embody a specialized, calculated technique or procedure and that it not be apparent to the public." *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393, 404 (S.D.N.Y. 2017); *see also Doherty*, 775 F.2d at 52 n.4 (Exemption 7(E) only protects techniques and procedures "not generally known to the public").

### i. The Nevada Office of the Attorney General's Grant Application.

OJP withholds several portions of the Nevada Office of the Attorney General's grant application under Exemption 7(E). None of the explanations provided by the agency establish a nexus with a law enforcement investigation or suggest that the withheld information constitutes "specialized, calculated technique[s] or procedures" or guidelines. *ACLU*, 243 F. Supp. 3d at 404.

The withheld information was compiled as part of the Nevada Office of the Attorney General's grant application, a non-investigatory purpose. Further, the application indicates that the program will be led by a "collaborative Steering Committee" to include several non-law enforcement entities, including the Clark County School District, the Latin Chamber of Commerce, faith-based organizations, employment programs, and community residents. Hinger Decl. Ex. 1 (OJP-1266–67). The application describes the proposed activities and goals in broad, high-level terms and lists a number of clearly non-law enforcement activities, such as providing mentorship. Hinger Decl. Ex. 1 (OJP-1274). To the extent that Nevada's application describes these activities alongside references to law enforcement, these descriptions of law enforcement are generalized in nature, not the type of files rationally tied to enforcement of particular federal laws, as Exemption 7 requires. *See Families for Freedom*, 797 F. Supp. 2d at 397 (records that "in a general sense . . . pertain to law enforcement," not subject to withholding under Exemption 7); *New Orleans Workers' Ctr. for Racial Justice*, 373 F. Supp. 3d at 56 (Exemption 7 not applicable where agency provided only a "blanket assertion that all the information withheld 'relates to investigations of non-U.S. individuals who may be illegally present in the United States'" (internal alteration and citation omitted)).The context of the grant applications suggests

that the information does not amount to specialized techniques or reveal concentrations of resources that would allow circumvention of the law. *ACLU*, 243 F. Supp. 3d at 404.

OJP first withholds "information about how many police squads work in a particular division and the shifts worked by those squads." ECF 48 at 7 (referencing OJP-1279). General information about the organization and numbers of law enforcement squads does not constitute a specialized, calculated technique or procedure. Nor does it constitute a guideline that would, if disclosed, risk circumvention of the law. Moreover, the withheld information appears to be publicly available on the law enforcement agency website.[5]

OJP describes other withheld information as "the location of where programs under a law enforcement grant were planned to be conducted and the characteristics of individuals that the Nevada OAG hoped to identify as participants in the grant program," ECF 48 at 7–8 (discussing OJP-1280–81). There is no indication that the locations of proposed grant activities or the characteristics of sought-after program participants have any nexus with a law enforcement purpose. Indeed, these redactions appear in a section of the grant application describing the "Capabilities and Competencies" of the "Latina Chamber of Commerce of Nevada" and the work of an academic in conjunction with the Chamber of Commerce. Hinger Decl. Ex. 1 (OJP-1280–81). OJP describes the individuals of interest, as "program participants" not targets of investigation. ECF 48 at 7-8; *see also* Hinger Decl. Ex. 1 (OJP-1269). Even if program participants were subject to surveillance, Nevada's application does not suggest a particularized technique or disclosure of a guideline that would lead to circumvention of the law. To the contrary, Nevada's statement of the problem suggests that it broadly targets the immigrant community in a way that would make circumvention practically impossible. *See* Hinger Aff. Ex.

---

[5] *See CCSDPD Organizational Chart, supra.*

1 (OJP-1265) ("[W]e are faced with an increased challenge of identifying MS-13 members as they . . . now look like typical residents of any community, many of whom even have regular employment in the agricultural, hospitality, and landscaping industries.").

Next, OJP withholds information described as "a description of its strategy and plan for disrupting a criminal gang organization, including the identity of entities that the Nevada OAG saw as stakeholders in its plan" ECF 48 at 8 (discussing OJP-1264–65, 1267–71, and1282–83). This description is too generalized to satisfy the requirements of Exemption 7. *See Families for Freedom*, 797 F. Supp. 2d at 397. The withheld information again appears within a grant application which otherwise describes a program implemented by local government and private entities in collaboration and describes proposed activities in general terms. For example, the first redactions appear in a paragraph describing public reports regarding unaccompanied minors across the United States. Hinger Decl. Ex. 1 (OJP-1264–66). The next redaction appears to be the actions that "[t]he multidisciplinary, inter-agency Steering Committee" will take in the context of its service as a "community relationship building team." *Id.* (OJP-1267). At one point, OJP redacts information about the collaboration between city and school district police departments, *id.* (OJP-1270); however, a subsequent section of the application states that this collaboration "will provide gang awareness and have a greater ability to conduct community outreach, surveillance, and increased intelligence of MS-13 activity." *Id.* (OJP-1279). In both of these instances, community outreach does not amount to investigation and enforcement of a federal law, and to the extent that community outreach is also used for surveillance, this surveillance as described is generalized and not tied to specific federal law enforcement *See Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52, (rejecting application of Exemption 7(E) to records related to "targeted 'social media platforms'" and "the perceived threats of

immigration" as overly general); *Long v. Immigration and Customs Enf't,* 149 F. Supp. 3d 39, 49 (D.D.C. 2015) (Exemption 7(E) applied where the agency showed that it more "than merely engag[ed] in a general monitoring of individuals' activities," and demonstrated a "clear connection between the records and possible security risks or violations of the law."). There is no information within the document or OJP's affidavit testimony that would establish a nexus with a law enforcement purpose, and moreover, there is no indication that the redacted information amounts to "a technical method" or a guideline that would not be known to the public or would lead to circumvention of the law if revealed. *ACLU*, 243 F. Supp. 3d at 402, 404; *Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52.

Finally, OJP claims further redactions are of "intelligence information regarding a possible attack by a criminal gang, the location of the possible attack, and related information." ECF 48 at 8 (discussing OJP-1266 and 1294). The agency's descriptions are too general to establish that Exemption 7(E) properly applies. The information is included in an application seeking funding for a proposed future program, not an investigatory file. The first sentence containing the redacted information reads: "[Redaction] intensifies the need to strengthen our collaborations . . . ." Hinger Decl. Ex. 1 (OJP-1266). Further, the reference to a threat of criminal activity in the context of a grant application does not constitute a specialized technique or procedure. *ACLU*, 243 F. Supp. 3d at 404. Instead, the redacted information appears to relate to generalized concerns with gang activity and a high-level description of a multifaceted program. *See Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52.

## ii. Bernalillo and Dallas Application Withholdings

OJP similarly relies on Exemption 7(E) to withhold portions of the Bernalillo County and Dallas County grant applications, described as "maps of targeted areas where law enforcement

entities sought to conduct gang suppression operations pursuant to a law enforcement grant." ECF 48 p. 8 (referring to OJP-1609, 4294, 4294, and 4307). Again, the explanations provided by the agency do not establish a nexus with a specific, as opposed to generic, law enforcement purpose or suggest that the withheld information constitutes the types of "specialized, calculated technique[s] or procedure[s]" or guidelines protected by Exemption 7. *ACLU*, 243 F. Supp. 3d at 404; *Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52.

The Bernalillo grant application describes the "main impetus of the Program" as "to establish a central referral and intervention location to assist families in need prior to involvement in the criminal justice system." Hinger Decl. Ex. 2 (OJP-1562). Similarly, the outcome of identifying "targeted areas," presumably those depicted in the withheld information, is described in decidedly non-law enforcement terms as:

> [p]revention and intervention with positive contact with law enforcement, support health and well-being, promote healing and prevent violence in schools and homes. Increase knowledge availability of positive alternative activities, and improve program effectiveness and quality.

*Id.* (OJP-1575). These references show that the withheld maps of targeted areas were not compiled for the purposes of a particular investigation and enforcement of federal law, but rather identify a general area in which the grant recipient will conduct a range of programming with the stated intent of *preventing* the need to engage in enforcement. In addition, these general area maps do not constitute a special, technical approach. *ACLU*, 243 F. Supp. 3d at 404; *Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52.

Similarly, Dallas County's grant application describes a "coordinated approach" that will concentrate on public/private partnerships." Hinger Decl. Ex. 4 (OJP-4135). The grant references Project Safe Neighborhood (PSN) "target areas," presumably those depicted by the withheld map. *Id.* (OJP-4136). However, as described within the grant application, the function and goals

of PSN do not focus on law enforcement as defined under Exemption 7. The grant application indicates that PSN includes education and community organizations and states that "PSN evaluates various trends related to gang populations, enables cooperation between different agencies, and assists in locating potential resources." *Id.* (OJP-4135). The role of the Dallas County District Attorney's Office also involves non-law enforcement activities, described as partnering with schools "to provide gang awareness and education, ensuring a safe school environment, and intervening with youth." *Id.* (OJP-4136). These descriptions of the program make clear that the "targeted areas" are not compiled in relation to an investigation, but rather to depict the general area in which a range of grant program activities will take place.

To the extent the maps amount to a guideline for resource allocation, these resources are not investigatory resources. Further, where the purpose of the maps is to identify areas for "positive contact with law enforcement," to "support health and well-being," Hinger Decl. Ex. 2 (OJP-1575), or to identify services and provide education, Hinger Decl. Ex. 4 (OJP-4135–36), there is no reason to believe disclosure would lead to a circumvention of the law. Moreover, where these maps depict general "areas," rather than specific locations, and do not indicate the specific laws intended for enforcement, there is no plausible argument that individuals could use the maps to circumvent the law. *ACLU*, 243 F. Supp. 3d at 404; *Knight First Amendment Inst.*, 407 F. Supp. 3d at 351–52.

In sum, OJP has not established that records it withholds have a nexus to law enforcement as defined under Exemption 7(E), or that they would reveal specialized techniques and procedures or guidelines that would lead to circumvention of the law. To the contrary, the withheld information appears in the context of grant applications discussing programs involving community collaboration and non-law enforcement activities. To the extent these activities are

intertwined with general monitoring of communities, these broadly framed efforts do not amount to the types of specific investigatory records tied to the enforcement of federal laws that FOIA protects. Instead, disclosure of these materials would serve FOIA's purpose of shining a light on the workings of the government.

## CONCLUSION

For the foregoing reasons, OJP's Motion for Summary Judgment should be denied and Plaintiffs' Cross Motion for Summary Judgement should be granted in full.

DATED: October 30, 2020

Respectfully Submitted,

 /s/  Sarah Hinger

Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—18th Floor
New York, New York 10004
T: (212) 549-2500
F: (212) 549-2654
shinger@aclu.org


 /s/  Amy Belsher

Amy Belsher
Jessica Perry
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—19th Floor
New York, New York 10004
T: (212) 607-3300
F: (212) 607-3318
abelsher@nyclu.org