**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AMERICAN CIVIL LIBERTIES UNION;
and AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,


                    *Plaintiffs*


v.


OFFICE OF JUSTICE PROGRAMS, and
U.S. DEPARTMENT OF JUSTICE,


                    *Defendants.*

---

Case No. 19-cv-5483 (MKV)

**REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..................................................................................................................... 1

    I.    The Government has the burden of establishing that exemptions from FOIA
         disclosure requirements apply ............................................................................... 1

    II.   OJP has not established a real threat to personal privacy as
         required by Exemption 6 .......................................................................................3

    III.  OJP fails to provide more than conclusory and generalized justifications for
         withholding records under Exemption 7 ...............................................................5

        A.   OJP's argument would extend Exemption 7 beyond its permissible
            bounds...........................................................................................................5

        B.   Exemption 7(C)..............................................................................................6

        C.   Exemption 7(E) .............................................................................................. 7

CONCLUSION...................................................................................................................9

# TABLE OF AUTHORITIES

## Cases

*American Civil Liberties Union v. U.S. Department of Justice*,
  229 F. Supp. 3d 259 (S.D.N.Y. 2017) ...............................................................1, 7

*Associated Press v. U.S. Department of Defense*,
  554 F.3d 274 (2d Cir. 2009)...................................................................................1

*Brennan Center for Justice at New York University School of Law v. Department
  of Homeland Security*,
  331 F. Supp. 3d 74 (S.D.N.Y. 2018) .................................................................5, 9

*Carney v. U.S. Department of Justice*,
  19 F.3d 807 (2d Cir. 1994)....................................................................................1

*Core v. U.S. Postal Service*,
  730 F.2d 946 (4th Cir. 1984)................................................................................4

*Department of Air Force v. Rose*,
  425 U.S. 352 (1976) .............................................................................................1

*Families for Freedom v. U.S. Customs & Border Protection*,
  797 F. Supp. 2d 375 (S.D.N.Y. 2011) ...............................................................5, 6

*Jefferson v. Department of Justice, Office of Professional Responsibility*,
  284 F.3d 172 (D.C. Cir. 2002) ..............................................................................2

*John Doe Agency v. John Doe Corporation*,
  493 U.S. 146 (1989) .............................................................................................7

*Judicial Watch, Inc. v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................................4

*Larson v. Department of State*,
  565 F.3d 857 (D.C. Cir. 2009) ..............................................................................1

*Long v. Office of Personnel Management*,
  692 F.3d 185 (2d Cir. 2012)...............................................................................4, 5

*Long v. Office of Personnel Management*,
  No. 5:05-CV-1522, 2007 WL 2903924 (N.D.N.Y. Sept. 30, 2007) .........................5

*Poitras v. Department of Homeland Security*,
  303 F. Supp. 3d 136 (D.D.C. 2018)....................................................................8, 9

*Public Employees for Environmental Responsibility v. U.S. Section, International*
  *Boundary and Water Commission, U.S.-Mexico*,
  740 F.3d 195 (D.C. Cir. 2014) .................................................................................6

*Seife v. U.S. Department of State*,
  298 F. Supp. 3d 592 (S.D.N.Y. 2018) ..................................................................3, 4

*Spadaro v. U.S. Customs & Border Protection*,
  978 F.3d 34 (2d Cir. 2020)......................................................................................2

*Tax Analysts v. Internal Revenue Service*,
  294 F.3d 71 (D.C. Cir. 2002) ..................................................................................6

*Wilner v. National Security Agency*,
  592 F.3d 60 (2d Cir. 2009)...........................................................................1, 3, 7

Plaintiffs respectfully submit this reply in support of Plaintiffs' Cross-Motion for Summary Judgement.

## ARGUMENT

### I.     The Government has the burden of establishing that exemptions from FOIA disclosure requirements apply.

The purpose of the Freedom of Information Act ("FOIA") is "to open agency action to the light of public scrutiny." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, "the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). To carry its burden, the agency must provide "reasonably specific detail," *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009), and cannot rely on "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping." *ACLU v. U.S. Dep't of Justice*, 229 F. Supp. 3d 259, 264 (S.D.N.Y. 2017) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009)). The agency's justifications must further "demonstrate that the information withheld logically falls within the claimed exemption" and must not be "controverted by [ ] contrary evidence in the record." *Wilner*, 592 F.3d at 73. The Office of Justice Programs ("OJP") does not and cannot provide an adequate justification for withholding records. Instead, the agency provides only vague and conclusory justifications and attempts to shift the burden to Plaintiffs. *See, e.g.*, Defs.' Reply Mem., ECF 52 at 3, 8. Their arguments upend the structure and purpose of FOIA.

OJP's claims that disclosure would subject grant administrators to harassment and lead to evasion of federal law enforcement are vague, conclusory, and illogical. Moreover, they are controverted by the record, as Plaintiffs set forth in their opening brief. Pls.' Mem., ECF 50 at

8,14-15, 17-22; *accord Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 42 (2d Cir. 2020) (affidavits that provide "reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by [ ] contrary evidence in the record . . .  cannot be rebutted by purely speculative claims about the existence and discoverability of *other documents*." (internal quotations and citations omitted) (emphasis added)). The contrary evidence in the record includes the community-based strategy OJP advertised in announcing the grant program. The agency states that "[a]pplicants must propose and undertake their work through a collaboration of key stakeholders" within the community and professes an expectation to work with grantees on "building social capital and community efficacy." Grant Announcement, ECF 1-1 at 8. It is illogical on its face for OJP to assert that information would be kept secret from the community stakeholders whom OJP requires to participate in program implementation. Nor does logic support the claim that public awareness of basic information—such as the neighborhoods in which programs take place—would undermine the enforcement of any federal law.

OJP therefore has not met *its burden* to establish that withheld records are exempt from FOIA's requirements of public disclosure. The agency's vague and conclusory justifications fail to provide the Court "an adequate foundation to review[ ] the soundness of the withholding." *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176 (D.C. Cir. 2002) (internal citation omitted). The surrounding context of the grant program materials in the record further suggest that public disclosure is not a threat but in fact is consistent with stated program objectives and in the public interest. Faced with the lack of any concrete justification for exemption, the Court should grant Plaintiffs' summary judgment motion.

## II.    OJP has not established a real threat to personal privacy as required by Exemption 6.

OJP relies on conclusory and speculative claims to invoke Exemption 6, Defs.' Mem., ECF 47 at 6, and OJP's reply provides no more reasoned justifications for its withholdings. At no point has OJP provided details of potential harms as required to "show that the threat to employees' privacy is real rather than speculative." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 625 (S.D.N.Y. 2018) (internal citations omitted); *see also* ECF 50 at 6. Instead, OJP makes the conclusory argument that individuals "by virtue of their work on [ ] sensitive law enforcement programs . . . are vulnerable to increased risk of harassment." ECF 52 at 4. OJP does not even identify the occupations—which include positions at "various grant applicant state and local government entities and related organizations," *id.* at 1–2—it alleges are categorically exempt from disclosure. *Id.* at 3–4. Nor does the agency provide a rational explanation for the claimed sensitivity of the programs. This is far from the "reasonably specific detail" required by FOIA. *Wilner*, 592 F.3d at 73. Plaintiffs do not have the burden of rebutting the applicability of the exemption when, as here, OJP has not demonstrated its applicability in the first instance.

Additionally, contrary to OJP's assertion, Plaintiffs do not concede that individual names would be properly withheld under Exemption 6. Rather, Plaintiffs simply do not seek the names of individuals. ECF 50 at 5. Therefore, OJP's argument that disclosure of resume information may lead to identification of individual names, ECF 52 at 2, is not determinative without the required showing of a likelihood of harassment or danger, which OJP has not established. Even if the resume information did lead to identification of the individuals, OJP's allegations of harm are conclusory and unsupported. The evidence further contradicts OJP's assertion of harm. *See* ECF 50 at 8; *Wilner*, 592 F.3d at 73. The records at issue relate to a community engagement-focused grant program which necessitates public-facing programs and employees. This indicates

that individual's positions are "known, or knowable, to the general public." *Seife*, 298 F. Supp. 3d at 625. Moreover, given the professed model of community collaboration, it is incongruous to suggest that individuals would face harassment due to association with the program.

OJP also continues to ignore important holdings in *Judicial Watch* and *Core* finding that Exemption 6 does not permit withholding of information regarding individuals who do business with the government, as distinguished from records regarding unsuccessful applicants. *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 37 (D.D.C. 2000) ("[T]here is a public interest in disclosing the resumes of executives of companies who do business with the Bank. In an analogous situation, the *Core* court found that 'the public has an interest in the competence of people the [government] employs.") (citing *Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984)).

OJP's reliance on *Long v. Office of Personnel Management*, 692 F.3d 185, 192 (2d Cir. 2012) is misplaced. *Long* involved the records of federal employees working on national security issues in the wake of the September 11th attacks, circumstances far from analogous to the present case. The Second Circuit in *Long* did not categorically carve out certain "sensitive" occupations for nondisclosure, as the agency suggests. ECF 52 at 4, 5. Rather, the court found the question of nondisclosure to be "close," *Long*, 692 F.3d at 195, but allowed nondisclosure in that case based on the governments' detailed explanations of why disclosure of individuals' duty stations posed a significant risk of physical harm. *Id.* at 196 ("OPM's affidavits set forth how terrorists and others could derive specific work addresses from the duty-station information. . . . [T]he risk of harm to that individual is not abated by anonymity. If the disclosure assisted wrongdoers in carrying out an attack, it would be Jane Doe, a real person, who would be harmed." (internal quotation marks, alterations, and citation omitted)); *see also Long v. Office of*

4

*Pers. Mgmt.*, No. 5:05-CV-1522, 2007 WL 2903924, at **8–9 (N.D.N.Y. Sept. 30, 2007)

("Occupations were deemed 'sensitive' if OPM determined that information about the identity . .

. of employees in those positions would be useful for selecting one or more specific targets

and/or for the planning and executing an attack on a potential target."). Where the Second Circuit

found *Long* to be a "close" call even with the agency's detailed explanations, 692 F.3d at 195,

OJP's conclusory assertion that "sensitive law enforcement programs" are at issue fails to satisfy

Exemption 6.

III.   **OJP fails to provide more than conclusory and generalized justifications for**
       **withholding records under Exemption 7.**

      A.   **OJP's argument would extend Exemption 7 beyond its permissible**
           **bounds.**

OJP concedes that it "does not directly carry out law enforcement activities" and further

that "the [withheld] records are not investigatory files but records associated with a broader

resourcing program." ECF 52 at 7. In these circumstances, Exemption 7 is wholly inapplicable.

*See, e.g.*, *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F.

Supp. 3d 74, 97 (S.D.N.Y. 2018) ("an agency must establish a rational nexus between the

agency's activity in compiling the documents and 'its law enforcement duties.'") (internal

citation omitted); *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375,

397 (S.D.N.Y. 2011) ("Courts have generally interpreted Exemption 7 as applying to records that

pertain to specific investigations conducted by agencies, whether internal or external, and

whether created or collected by the agency—in other words, investigatory files"); *id.* at 397

n.144 (collecting cases); ECF 50 at 10–11.

OJP's attempt to extend Exemption 7 beyond its application to law enforcement

investigatory files is unsupported by the case law it relies upon. Contrary to OJP's argument, *see*

ECF 52 at 6, the court in *PEER v. International Boundary and Water Commission* considered

investigatory records which "describe[d] how law enforcement personnel might *investigate* the cause of a dam failure . . . when there is suspicion of criminal sabotage or terrorism." *Public Employees for Environmental Responsibility v. U.S. Section, International Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (emphasis added). The language quoted by OJP relates only to whether procedures for the conduct of a future—as opposed to ongoing or completed—investigation fall under Exemption 7. *PEER*, 740 F.3d at 203 ("Law enforcement entails more than just investigating and prosecuting individuals *after* a violation of the law.") (emphasis in original). Similarly, the court in *Tax Analysts v. I.R.S.* held that Exemption 7 may apply to materials not created "in the course of a specific investigation," but that are still "guidelines, techniques, sources, and procedures *for law enforcement investigations*." 294 F.3d 71, 79 (D.C. Cir. 2002) (emphasis added).

OJP's arguments fail not because the records were compiled to guide future investigations, the issue in the cited case law, but because they are not law enforcement investigatory records at all, as the agency concedes. ECF 52 at 7. In the absence of a law enforcement investigatory nexus, the agency relies on generalized, vague, and conclusory references to law enforcement, including a reference to the name of the grant program. ECF 52 at 6–7. However, the agency does not and cannot refute the applicability of case law holding that generalized references to law enforcement are insufficient to establish the applicability of Exemption 7. *See, e.g.*, *Families for Freedom*, 797 F. Supp. 2d at 397; ECF 50 at 13.

### B. Exemption 7(C)

In the absence of detailed justifications for its withholdings under Exemption 7(C), OJP attempts to shift the burden of proof to Plaintiffs. The agency clearly bears the burden of establishing that a FOIA exemption applies and must satisfy its burden for each withholding.

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989). The agency provides no response to Plaintiffs' identification of deficiencies regarding the withholdings at OJP-1280, 4117, 4293, and 4119–20.

With regards to OJP-1279–80, Plaintiffs point to evidence in the record that contradicts the statement included in the agency declaration. ECF 50 at 14–15. OJP does not even argue that the redacted information includes specific types of personally identifying information, only that it "*could* . . . consist of personally-identifying professional information." ECF 52 at 8 (emphasis added). The burden rests with the agency to establish that the information is personally identifying, and that it would lead to harassment or interference with law enforcement duties. The agency's declarant merely restates the legal standard that release of information "would constitute an unwarranted invasion of privacy." Gaylord Decl., ECF 48 at ¶¶ 13, 14. These conclusory statements clearly fail to satisfy the agency's burden. *See ACLU*, 229 F. Supp. 3d at 264.

### C. Exemption 7(E)

Unable to satisfy the requirements of Exemption 7(E) through its own evidence, OJP again attempts to shift the burden of proof to Plaintiffs. In refuting OJP's arguments, Plaintiffs rely not on "mere speculation," as the agency suggests, *see* ECF 52 at 10, but point to logical shortcomings in the agency's position and to the evidentiary record contradicting the agency's claims. ECF 50 at 17–23; *Wilner*, 592 F.3d at 73.

Beyond its misconstrued burden of proof, OJP rests on the statement of its declarant. However, as set forth in Plaintiffs' opening brief, the declaration describes documents related to non-law enforcement activities or is contradicted by other evidence in the record, *see* ECF 50 at 17–23, and makes only a broad generalized argument regarding circumvention of "law

enforcement operations." *See* ECF 48 at ¶ 16 ("The information withheld under Exemption 7(E) reflects techniques and procedures for law enforcement investigations, and disclosure could reasonably create a risk of circumvention of the law by revealing strategic decisions related to prosecution of gang activity. For instance, the information in these records reveal the extent and location of law enforcement operations. If criminals know when and where law enforcement is going to enforce the law, it will be easier to circumvent enforcement operations."). OJP does not specify any law, federal or state, to be enforced, assert that specific times and locations for enforcement actions would be revealed, or provide any logical explanation of how awareness of the general area "where law enforcement is going to enforce the law" will lead to circumvention.

OJP's reliance on *Poitras v. Dep't of Homeland Security*, 303 F. Supp. 3d 136 (D.D.C. 2018), is misplaced. *Poitras* involved the FBI, an agency with a clear law enforcement function, withholding investigatory files—both foundational factors not present in this case—and found that the FBI supplied adequately detailed explanations of how disclosure of each withheld document could lead to circumvention of the law. *Id.* at 159 (recounting the FBI's submission that "releasing sensitive case file numbers would 'identify the investigative interest or priority given to such matters' because, 'applying a mosaic analysis, suspects could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities.'" (quoting the agency declaration) (alterations omitted)); *id.* ("Revealing the amount of money the FBI has paid or plans to pay in order *to implement certain investigative techniques* would reveal the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts" (quoting the agency declaration) (emphasis added)); *see also Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law*, 331

F. Supp. 3d at 99 (recounting justifications supplied by the FBI for withholding investigative files). Although OJP claims the information it withholds regarding federal grant programs would disclose "sensitive strategic decisions" and the "level of focus on certain types of law enforcement intelligence gathering efforts," ECF 52 at 10 (quoting *Poitras*, 303 F. Supp. 3d at 159), the agency has not supplied an evidentiary foundation for these conclusions. Where OJP "does not directly carry out law enforcement activities" and withholds files "associated with a broader resourcing program," ECF 52 at 7, the release of these records cannot possibly lead to a circumvention of federal law enforcement.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment, the Court should deny Defendants' Motion for Summary Judgment and grant Plaintiffs' Cross-Motion for Summary Judgment in full.

DATED: November 23, 2020

                                        Respectfully Submitted,

                                         _/s/  Sarah Hinger_____

                                        Sarah Hinger
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        125 Broad Street—18th Floor
                                        New York, New York 10004
                                        T: (212) 549-2500
                                        F: (212) 549-2654
                                        *shinger@aclu.org*

_/s/  Amy Belsher_

Amy Belsher
Jessica Perry
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—19th Floor
New York, New York 10004
T: (212) 607-3300
F: (212) 607-3318
_abelsher@nyclu.org_

10