USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/27/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

               Plaintiffs,

           -against-

DEPARTMENT OF JUSTICE and OFFICE OF
JUSTICE PROGRAMS,

               Defendants.

---

1:19-cv-5483 (MKV)

ORDER GRANTING MOTIONS
FOR SUMMARY JUDGMENT IN
PART

MARY KAY VYSKOCIL, United States District Judge:

This case involves a Freedom of Information Act ("FOIA") request for documents relating to grant programs administered by the Office of Justice Programs ("OJP") and the Office of Juvenile Justice and Delinquency Prevention ("OJJDP"), component offices of the Department of Justice ("DOJ").  The American Civil Liberties Union ("ACLU") and the American Civil Liberties Union Foundation (together, "Plaintiffs") believe that the grant programs are an attempt at suppressing and targeting immigrant communities, and seek information relating to grant applications.  Defendants resist disclosure of the information as it relates to personal information or law enforcement tactics.

Defendants have moved for summary judgment and filed a memorandum of law in support of the motion, [Defs. Mot., ECF No. 46; Defs. Mem., ECF No. 47].  Plaintiffs have cross-moved for summary judgment [Pls. Mot., ECF No. 49; Pls. Mem., ECF No. 50].  Each Party filed a respective reply in connection with their motion, [Pls. Reply, ECF No. 53; Defs. Reply, ECF No. 52].  The cross-motions concern whether the reasons offered by the DOJ and the OJP for withholding certain documents/information under FOIA are justified and appropriate, which the Court now considers.  5 U.S.C. § 552(b).  For the following reasons, the Court grants

1

in part both Plaintiffs' and Defendants' Motions for Summary Judgment, upholding some, but

not all, of the Defendants' invocation of exemptions from disclosure under FOIA.

## BACKGROUND

In 2018, OJJDP announced "two new funding opportunities for state and local

enforcement agencies." Compl. ¶ 21. The two at-issue programs are the "FY 2018 Gang

Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of

Unaccompanied Alien Children" and the "FY 2018 Gang Suppression Planning Grants

Program." Compl. ¶ 21. In October 2018, Plaintiffs filed a FOIA request seeking information

that related to those grant programs, which are administered through the DOJ, OJP, and the

OJJDP. Compl. ¶ 2, 5. Specifically, Plaintiffs requested the following information relating to

eleven categories of records:

1. All records submitted to OJJDP as part of an application for grant funding through "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845;
2. All records submitted to OJJDP as part of an application for grant funding through OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;
3. Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and any response provided by OJJDP or any other federal government agency or department;
4. Inquiries, communications, or other records received by OJJDP regarding "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP2018-14582, and any response provided by OJJDP or any other federal government agency or department;
5. All records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018- 13845;
6. All records exchanged between OJJDP and any other agency or department of federal government related to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

7. All records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845;

8. All records related to the evaluation of applications received pursuant to "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP2018-14582;

9. All records related to the planned use by OJJDP or any other federal government agency or division of information obtained by grantees under "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582;

10. All records related to the source and budgeting of funds for "OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582; and

11. All records related to the information relied upon and supporting the preference for a law enforcement and prosecutorial approach through OJJDP FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach To Address Gang Recruitment of Unaccompanied Alien Children," OJJDP-2018-13845, and/or "OJJDP FY 2018 Gang Suppression Planning Grants Program," OJJDP-2018-14582. Compl. ¶ 26.

Defendants acknowledged receipt of the FOIA request but did not immediately produce any documents or otherwise respond. Compl. ¶¶ 28-33. According to Plaintiffs, they made "numerous good faith attempts to communicate" about a response and production of the requested documents to no avail. Compl. ¶ 31. Ultimately, Plaintiffs brought this case stating that the refusal to produce documents and expedite processing was a constructive denial of their FOIA request. Compl. at 11.

Thereafter, Defendants began reviewing and producing documents on a rolling basis. Pls. Mem. at 3; Defs. Mem. at 3. During the course of this litigation, the Parties have negotiated both the scope of the request and the applicability of various FOIA exemptions to the requested documents. *See* Pls. Mem. at 3. After spending months attempting to resolve the conflicts, the Parties have reached an impasse. [*See* ECF Nos. 26, 28, 29, 31, 33, 36, 40]. Plaintiffs maintain

3

that Defendants continue to impermissibly withhold information under the auspices of FOIA exemptions.  Pls. Mem. at 3.  Defendants rejoin that the withholdings are proper and necessary.  Defs. Mem. at 4.  Both Parties filed Motions for Summary Judgment, and the Court now considers the adequacy of the withholdings under FOIA.

## ANALYSIS

### I.   LEGAL STANDARD

FOIA requires federal agencies to disclose "agency records" upon request.  *See* 5 U.S.C. § 552(a).  Agencies, however, may seek to withhold information and resist disclosure under one of FOIA's enumerated exemptions.  *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); 5 U.S.C. § 552(b).  "The government bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure."  *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (quoting *Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161, 166 (2d Cir. 2014)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A challenge to a government agency's response to a FOIA request is usually resolved on a motion for summary judgment.  *See Det. Watch Network v. ICE*, 215 F. Supp. 3d 256, 261 (S.D.N.Y. 2016) (citing *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994)).  A court "may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Cuomo*, 166 F.3d at 478 (internal quotation marks and citations omitted).  Thus, "where the agency's

submissions are 'adequate on their face,' district courts 'may forgo discovery and award summary judgment on the basis of affidavits'" *N.Y. Times Co.*, 235 F. Supp. 3d at 529 (quoting *Carney*, 19 F.3d at 812). On the other hand, "'[s]ummary judgment in favor of the FOIA plaintiff' is appropriate 'when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'" *New York Times*, 499 F. Supp. 2d at 509 (quoting *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

## II.   MATERIALS CONSIDERED

The Court has carefully reviewed both Motions for Summary Judgment, the Declarations in Support, and the Reply Memoranda in Support. As is common in FOIA cases, the Defendants also have provided a so-called "*Vaughn* index" of the location of the withheld information identified by Bates number, the FOIA exemption cited for that withholding, and any supporting rationale. Gaylord Decl., Ex. 1. "Once a FOIA request has been made for documents, the preparation of a *Vaughn* index is now an accepted method for the Government to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *New York Times Co. v. DOJ*, 758 F.3d 436, 438 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014). "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015). "Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is no fixed rule establishing what such an affidavit must look like." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (internal quotation marks and citations omitted). Defendants' declaration in support of its Motion for Summary Judgment states that the "revised, final *Vaughn*

index attached" to the declaration is "incorporated by reference."  Gaylord Decl. ¶ 9.  Thus, the
Court also considers any rationale for the withholding of information included in the *Vaughn*
index.

## III.   FOIA EXEMPTIONS 6, 7(C) and 7(E)

The Parties agree that the only withholdings that the Court must review in this case are
certain exemptions made under 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E), which the Court
refers to as Exemption 6, Exemption 7(C), and Exemption 7(E).  Pls. Mem. at 3; Defs. Reply
at 1.  The Court addresses each exemption and the information withheld in turn.

### A.  Exemption 6

Exemption 6 permits an agency to withhold "personnel and medical files and similar files
the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."
5 U.S.C. § 552(b)(6).  "Exemption 6 is intended to protect individuals from the injury and
embarrassment that can result from the unnecessary disclosure of personal information."  *Wood
v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005) (internal quotation marks omitted).  The Second Circuit
employs a two-step inquiry to determine whether identifying information may be withheld under
Exemption 6:

> First, we must determine whether the personal information is contained in
> a file similar to a medical or personnel file.  In considering whether the information
> is contained in a "similar" file, we ask whether the records at issue are likely to
> contain the type of personal information that would be in a medical or personnel
> file.  At the second step of the analysis under Exemption 6, we balance the public's
> need for the information against the individual's privacy interest to determine
> whether the disclosure of the names would constitute a "clearly unwarranted
> invasion of personal privacy."

*Id.* (internal quotation marks and citations omitted).

The Parties do not dispute that the withholdings here apply to information contained in a
requisite file under the first step of the inquiry.  Defs. Mem. at 6; *see* Pls. Mem. at 9 (arguing

6

withholdings fail second step).  What constitutes a file for purposes of Exemption 6 is nonetheless quite broad, and the Second Circuit considers "a record . . . a 'similar file' if it contains personal information identifiable to a particular person." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014); *see also United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

At step two of the Exemption 6 balancing analysis, the court must "first determine whether disclosure of the files would compromise a substantial, as opposed to a *de minimis*, privacy interest, because if no substantial privacy interest is implicated[,] FOIA demands disclosure." *Seife v. U.S. Dep't of State*, 366 F. Supp. 3d 592, 610 (S.D.N.Y. 2019) (quoting *Cook*, 758 F.3d at 175-76).  "The privacy interests protected by the exemptions to FOIA are broadly construed" and "[p]ersonal information, including a citizen's name, address, and criminal history, has been found to implicate a privacy interest cognizable under the FOIA exemptions." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008).

Once an agency has demonstrated that a privacy interest within the meaning of Exemption 6 exists, "the burden falls to the requesting party to establish that disclosure 'would serve a public interest cognizable under FOIA.'" *Seife*, 366 F. Supp. 3d at 610 (quoting *Associated Press*, 549 F.3d at 66).  In balancing the competing concerns under FOIA, "[t]he only public interest found to be relevant" is "'the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Associated Press*, 549 F.3d at 66 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (alteration in original)); *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (Congress enacted FOIA to "shed . . . light on an agency's performance of its statutory duties.").  "[T]he bar

is low: 'FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests.'" *Long v. OPM*, 692 F.3d 185, 191 (2d Cir. 2012) (quoting *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992)).

Plaintiffs acknowledge that they do not seek "disclosure of individual names, phone numbers or email addresses," which would likely raise a privacy interest under FOIA.  Pls. Mem. at 5; *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 285 (2d Cir. 2009) (it is "well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA.").[1]  Instead, the parties dispute whether the withholding of "other personally identifying information," "positions, job responsibilities (e.g. the areas over which a law enforcement employee has oversight)," "educational history," "employment history" and "professional awards" is appropriate.  Gaylord Decl. at 5; Pls. Mem. at 5; Defs. Reply at 1-2.  Defendants argue that disclosure would be tantamount to the disclosure of a person's identity, thus giving rise to a privacy interest in the information.  Defs. Mem. at 7; Defs. Reply at 4.

Courts have concluded that indirect identification (*i.e.*, when disclosed, the information could indirectly identify an individual) gives rise to at least a privacy interest in the information sought.  *See Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 37 (D.D.C. 2000) ("disclosure of even portions of [] resumes would enable the public to match up employment history, schooling accomplishments, and other resume matter . . . to indirectly identify the

---

[1] The *Vaughn* Index, Gaylord Decl, Ex. 1, notes that information appearing on Bates Numbers 1143 and 1563-1564 is withheld under Exemption 6 because it discloses an "individual's name."  Given that the Plaintiffs have conceded they do not seek "disclosure of individual names," the Court does not consider whether the withholding of the information in Bates Numbers 1143 and 1563-1564 was proper.  Pls. Mem. at 5; *see also* Pls. Reply at 3 (stating "Plaintiffs simply do not seek the names of individuals.").  Similarly, Plaintiff does not seek "phone numbers or email addresses." Pls. Mem. at 5.  Bates Number 1523 reflects "individuals' phone numbers."  Gaylord Decl. Ex. 1. Accordingly, the Court will enter summary judgment in favor of Defendants as to Bates Numbers 1143, 1563-1564, and 1523.

applicant.") (internal quotation marks omitted).  The Court agrees.  It would effectively nullify

Exemption 6 if only names and clear identification raise a privacy interest under FOIA, but there

were no privacy interests even where information sought could lead the requester to easily

identify an individual's name or identity.  The Second Circuit has expressly directed that

"identifying information such as names, addresses, *and other personal information* falls within

the ambit of privacy concerns under FOIA."  *Associated Press*, 554 F.3d at 285.  And other

courts routinely hold that employment history, and similar information, may give rise to a

privacy interest for purposes of FOIA.  *Parker v. United States DOJ Exec. Office for United*

*States Attys.*, 68 F. Supp. 3d 218, 231 (D.D.C. 2014) (Exemption 6 "protects information related

to a person's employment status and employment history"); *Seife v. Dep't of State*, 298 F. Supp.

3d 592, 624 (S.D.N.Y. 2018).  *See also Hall v. CIA*, 881 F. Supp. 38, 70 (D.D.C. 2012) ("Typical

personal information protected under [E]xemption 6 includes 'place of birth, date of birth, date

of marriage, employment history, and comparable data.'") (quoting *Nat'l Ass'n of Retired Fed.*

*Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989)).

        The existence of a privacy interest in the withheld information, however, does not end the

inquiry.  Information that may identify an individual does necessarily present an actual threat of a

"clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Defendants further

argue that the withholdings are warranted because the information relates to those "employed by

local and state law enforcement agencies who . . . will be vulnerable to harassment should their

information be disclosed."  Gaylord Decl. at 6; Defs. Mem. at 6-7.  However, "an identifiable

privacy interest in avoiding disclosures of information that could lead to annoyance or

harassment . . . does not authorize a 'blanket exemption' for the names of all government

employees in all records." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (citing *Baez v. DOJ*, 647 F.2d 1328, 1338 (D.C. Cir. 1980)).

Plaintiffs assert that the information withheld under Exemption 6 goes beyond that which is permitted by FOIA because disclosure presents no real threat of harm.  *See* Pls. Mem. at 7. The threat to an individual's privacy interest "depends on the consequences likely to ensue from disclosure."  *Wood*, 432 F.3d at 88.  Defendants claim that the information, which involves "the sensitive topic of law enforcement within immigrant communities," presents the risk of harassment or attack.  Defs. Mem. at 14; Defs Reply at 7.  But, as Plaintiffs point out, the threat of harassment or harm that Defendants identify as the risk of disclosure must be real or actual. Pls. Mem. at 7-8; *Seife*, 298 F. Supp. 3d at 625 ("To justify their Exemption 6 withholdings, the defendants must show that the threat to employee's privacy is real rather than speculative."); *Adelante Ala. Worker Ctr. v. United States Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 367 (S.D.N.Y. 2019) (stating the "mere possibility that the release of information could potentially lead to harassment is not evidence of a 'real' threat of harassment."); *Associated Press*, 554 F.3d at 292 (Second Circuit "emphasize[s] that 'the focus, in assessing a claim under Exemption 6, must be solely upon what the requested information *reveals*, not upon what it might lead to.'") (quoting *Dep't of State v. Ray*, 502 U.S. 164, 180 (1991)) (Scalia, J. concurring) (emphasis in original); *see also Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976) ("Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.").

Defendants baldly state that the subjects of the information withheld under Exemption 6 "will be vulnerable to harassment should their information be disclosed."  Gaylord Decl. at 6; Ex. 1 Bates Numbers 1277-1278, 1566, 4118, 4139, 4289, 4290, 4291, 4310, 4423-4430, 5961. Defendants do little to support their speculative assertion that "the sensitive topic of law

enforcement within immigrant communities" leaves these individuals "vulnerable to harassment or attack." *See Long*, 692 F.3d at 192 (describing how individuals at issue would be vulnerable on basis of their work).  Indeed, it is not entirely clear based on the Defendants' declaration how, or even that, these individuals are involved with immigration.  *See* Gaylord Decl. ¶ 11 (stating the information compiled derives from a variety of police departments, school districts, and prosecutorial offices).  It may be that these individuals are vulnerable to harassment because of their involvement with immigration law enforcement, but Defendants bear the burden of establishing that the exemption is warranted.  *Carney*, 19 F.3d at 812; *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (agency must "give the reviewing court a reasonable basis to evaluate the claim of privilege.").  Because Defendants have not made any such showing, whatever privacy interest the individuals may have in controlling the disclosure of their employment history, job responsibilities, and professional awards, among other things, *see* Gaylord Decl. at 5, is *de minimis* and the need to balance the privacy interest with the public interest in disclosure is not triggered.  *See Cook*, 758 F.3d at 176.  The withholdings made solely on the grounds of Exemption 6 are therefore inadequate.  Plaintiffs' Motion for Summary Judgment as to Bates Numbers 1277-1278, 1566, 4118, 4139, 4289, 4290, 4291, 4310, 4423-4430, and 5961 and the information withheld solely on the grounds of Exemption 6 at Bates Number 1281 is granted.[2]

**B.  Exemption 7**

FOIA Exemption 7(C) permits the Government to withhold "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an

---

[2] As discussed *infra* Section III.B.2, the Court reviews those withholdings made under both Exemption 6 and Exemption 7(C) for adequacy under Exemption 7(C) separately.  Hinger Decl. [ECF No. 51], Ex. 1 at Bates Numbers 1279, 1280, 1565, 1567, 4117, 4119-4120, 4138, 4293.

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(E) also permits the withholding of "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *Id.* § 552(b)(7)(E).

### 1.   *Compiled for Law Enforcement Purposes*

As a threshold matter, Exemption 7 only permits the withholding of records or information to the extent it was "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7). As other courts have noted, the Second Circuit has not yet provided guidance as to when records are "compiled for law enforcement purposes" under FOIA.  *Human Rights Watch v. DOJ*, 2015 U.S. Dist. LEXIS 123592, at *12 (S.D.N.Y. Sept. 16, 2015); *Families for Freedom v. United States Customs & Border Prot.*, 837 F. Supp. 2d 287, 294 (S.D.N.Y. 2011).  Recently, the Second Circuit determined that memoranda that included "the identities of potential witnesses in a criminal investigation" prepared by a private law firm during a DOJ investigation were "compiled for law enforcement purposes," but did not elucidate further.  *See Sorin v. DOJ*, 758 F. App'x 28, 33 (2d Cir. 2018).

The D.C. Circuit has opined that "[l]aw enforcement entails more than just investigating and prosecuting individuals *after* a violation of the law."  *Public Emps. For Env't. Responsibility ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014) (Kavanaugh, J.).  To that end, the D.C. Circuit also has highlighted that "compiled for law enforcement purposes" "includes . . . proactive steps designed to prevent criminal activity and maintain security."  *Id.* (quoting *Milner*, 562 U.S. at 582 (Alito, J. concurring)).  Other courts in this Circuit also import the requirement from the D.C. Circuit that "[t]o show that particular

documents qualify as 'records or information compiled for law enforcement purposes,' an agency must establish a rational nexus between the agency's activity in compiling the documents and 'its law enforcement duties.'"   *See, e.g., Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. Dep't of Homeland Sec.*, 331 F. Supp. 74, 97 (S.D.N.Y. 2018) (citing *Pratt v. Webster*, 673 F.2d 408, 419-21 (D.C. Cir. 1982)); *New York Times Co. v. DOJ*, 390 F. Supp. 3d 499, 513 (S.D.N.Y. 2019); *Stahl v. DOJ*, 2021 U.S. Dist. LEXIS 58871, at *11 n.4 (E.D.N.Y. Mar. 26, 2021) (noting use of requirement).  The Supreme Court has directed that courts take a practical approach when reading and applying the language of Exemption 7.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 157 (1989) ("This Court consistently has taken a practical approach when it has been confronted with an issue of interpretation of [FOIA].")

Plaintiffs here propound that "the records at issue were compiled in the course of OJP's administration of a federal grant program with only a generalized relationship to law enforcement."  Pls. Mem. at 10.  Under Plaintiffs' reading of Exemption 7, "[a]cting with a law enforcement purpose means 'preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations.'"  Pls. Mem. at 10 (quoting *Lamont v. DOJ*, 475 F. Supp. 761, 773 (S.D.N.Y. 1979)).  But this interpretation is too narrow.  As noted, law enforcement for purposes of Exemption 7 goes beyond traditional investigation and prosecution of individuals for criminal offenses.  *PEER*, 740 F.3d at 203.  Similarly, Plaintiffs claim that Exemption 7 cannot apply because OJP's "has no law enforcement duties," Pls. Mem. at 11, is too restrictive.  "[T]he withholding agency need not have statutory law enforcement functions" under that exemption.  *PEER*, 740 F.3d at 203 (citing 5 U.S.C. § 552(b)(7)); *see also Keys*, 830 F.2d at 342 ("There is . . . no requirement under [E]xemption 7 that any violation of federal law be implicated.")

The analysis in *Brennan Center* is instructive.  Plaintiff in that case sought records from the Department of Homeland Security's Office of Intelligence and Analysis pertaining to its "countering violent extremism" initiatives.  331 F. Supp. 3d at 79-81.  The Office of Intelligence and Analysis established that the information withheld was "related to law enforcement purposes because it concern[ed] a source that provided information on social media used to assist counterterrorism and law enforcement officials in understanding" potential threats "as well as information regarding 'techniques, procedures, and guidelines for identifying'" individuals of interest.  *Id.* at 81.  The Court reasoned that the information requested was "compiled" for use in assisting extra-agency law enforcement officials in the course of their duties, and therefore was properly withheld under Exemption 7.

The withheld information in this case relates to the two grant programs for which Plaintiffs have requested documents:  the "FY 2018 Gang Suppression: A Law Enforcement and Prosecutorial Approach to Address Gang Recruitment of Unaccompanied Alien Children" and the "FY 2018 Gang Suppression Planning Grants Program."  Compl. ¶¶ 25-27; Defs' Mem. at 6-7.  Defendants claim the Exemption 7(C) withholdings relate to identifying information "of law enforcement personnel[] who would execute the law enforcement aspects of a grant program" and additional personal identifying information received by the Bernalillo County Sheriff's Department, the Suffolk County Police Department, and the Dallas County District Attorney's Office "compiled for a law enforcement purpose [(*i.e.*,] applying for and executing a law enforcement program grant."  Gaylord Decl. ¶ 13.  Defendants further explain that the Exemption 7(E) redactions may either reveal a "[d]escription of intelligence and law enforcement sources and methods" or a "geographical map of [] targeted areas [that] could be used to circumvent" law enforcement.  Gaylord Decl., Ex. 1 Bates Numbers 1264-1271, 1279,

14

1280, 1281, 1282-1283, 1294 (sources and methods) and Bates Numbers 1609, 4292, 4294, 4307 (maps). The Defendants have drawn a rational nexus to the activity in compiling the documents and law enforcement. Thus, the information is properly considered "compiled for law enforcement purposes" under Exemption 7. *Brennan Ctr.*, 331 F. Supp. 3d at 79-81; *PEER*, 740 F.3d at 199, 204. (information prepared by agency that administers dams was exempt under Exemption 7(E) where reports included emergency plans of action for law enforcement).

Plaintiffs further protest that the withheld information is not found in a requisite "investigatory file" and thus Exemption 7 cannot apply. Pls. Mem. at 11, 13; Pls. Reply at 6. Plaintiffs are wrong on both the law and the facts.

*First*, the "investigatory file" language Plaintiff uses appears to be outmoded former language held over in dicta from a pre-1974 amendment to FOIA. *See Mobile Oil Corp. v. FTC*, 430 F. Supp. 849, 853 (S.D.N.Y. 1977) (stating that pre-1974, Exemption 7 read as "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."); *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 491 (2d Cir. 1976) ("Exemption 7 originally covered 'investigatory files.'"). The Court finds no support for the Plaintiffs' contention that Defendants' arguments must fail because "[c]ourts apply Exemption 7 only to 'investigatory files.'" Pls. Mem. at 11; *see also* Pls. Reply at 6. Indeed, the very case on which Plaintiffs rely belies the assertion that courts consider information and records collected by an agency for external investigations as ineligible for withholding under Exemption 7. *See Families for Freedom*., 797 F. Supp. 2d at 397 ("Courts have generally interpreted Exemption 7 as applying to records that pertain to specific investigations conducted by agencies, *whether internal or external, and whether created or collected by the agency* — in other words, investigatory files."). *Second*, Defendants plainly provide evidentiary support that in this case

the information withheld under Exemption 7 was "compiled" by the agency from "information

of law enforcement personnel submitted by various local law enforcement agencies."  *See*

Gaylord Decl. ¶ 13.

In sum, Defendants clear the threshold hurdle that the information in this case was

"compiled for law enforcement purposes," and was used in assisting law enforcement officials in

the course of their duties.  Thus, Exemption 7 may apply to the withheld information.

### 2.  *Exemption 7(C)*

Exemption 7(C) permits the withholding of information compiled for law enforcement

purposes that "could reasonably be expected to constitute an unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(7)(C).  "Exemptions 6 and 7(C) overlap," and "Exemption 7(C) is

broader and requires a lesser showing of the likelihood of intrusion into personal privacy."  *Gelb*

*v. United States Dep't of Homeland Security*, 2017 U.S. Dist. LEXIS 150207, at *15 (Sept. 15,

2017) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004)); *Roth v.*

*DOJ*, 642 F.3d 1161, 1173 (2d Cir. 2011) ("Exemption 7(C), [which requires] the government to

prove only that disclosure could reasonably be expected to constitute an unwarranted invasion of

personal privacy, is somewhat broader than Exemption 6, which requires proof of a clearly

unwarranted invasion of personal privacy.") (internal quotation marks omitted).

Certain of the redactions in the documents provided to Plaintiffs were made on the basis

of both Exemption 6 and Exemption 7(C).  Hinger Decl. [ECF No. 51], Ex. 1 at Bates Numbers

1279, 1280, 1565, 1567, 4117, 4119-4120, 4138, 4293.  Thus, to the extent the withholding of

the information under Exemption 6 was inadequate, the Court now reconsiders whether

withholding under Exemption 7(C) is appropriate.[3]

With respect to the 7(C) redactions on Bates Numbers 1279 and 1280, Defendants state

that the information is the "[p]ersonally identifying information of law enforcement personnel,

who would execute the law enforcement aspects of a grant program."  Gaylord Decl. ¶ 13.

Similarly, the redactions made under Exemption 6 and 7(C) in Bates Numbers 1565, 1567, 4117,

4138, and 4293 withhold "information of law enforcement personnel submitted by various local

law enforcement agencies" "compiled for [the] law enforcement purposes" of "applying for and

executing a law enforcement program grant."  Gaylord Decl. ¶ 13.

The starting point for "determining whether Exemption 7(C) applies is whether there is

any privacy interest in the information sought."  *Associated Press*, 554 F.3d at 284.  "That

interest need only be more than *de minimis* to trigger the application of the balancing test to

determine whether disclosure is permitted under FOIA."  *Id.* at 286.  "The privacy interest

protected by Exemption 7(C) is an interest in 'avoiding disclosure of personal matters' and

'keeping personal facts away from the public eye.'"  *Id.* (quoting *Reporters Comm.*, 489 U.S. at

762, 769).  "[T]he privacy interest for purposes of Exemption 7(C) is broad and encompasses

'the individual's control of information concerning his or her person.'"  *Id.* at 287 (quoting

*Reporters Comm.*, 489 U.S. at 763).  Because the standard under Exemption 7(C) is lower than

that of Exemption 6, the Court concludes that the individuals here have at least a greater than *de*

*minimis* interest in their personal information.  *See Long*, 692 F.3d at 192 (stating "employees

---

[3] Bates Numbers 5956 and 5960 relate to the name and email address of a law enforcement officer.  Plaintiffs state they are not seeking that information, Pls. Mem. at 5.  As such, the Court will grant summary judgment in favor of Defendants with respect to Bates Number 5956 and 5960.

in . . . sensitive agencies [and] sensitive occupations have a cognizable privacy interest in keeping their names from being disclosed wholesale.").

"The Supreme Court has made it clear that once a privacy interest is identified, disclosure is unwarranted under Exemption 7(C) unless the requester can show a 'sufficient reason for the disclosure.'" *Associated Press*, 554 F.3d at 288 (quoting *Favish*, 541 U.S. at 172).  Plaintiff claims that "information about the qualifications of those involved in the implementation of a federal grant program are relevant to the public interest of understanding how OJP views the desired qualifications of grantees, and how the federal programs will be implemented."  Pls. Mem. at 15.  But the Supreme Court teaches that the party seeking the information "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that the "information is likely to advance that interest."  *Favish*, 541 U.S. at 172.  Further, "[i]n the context of addressing whether disclosure of redacted names and identifying information is warranted, the Supreme Court has explained that where disclosure of the documents themselves adequately serve the public interest, a requester must show how 'the addition of the redacted identifying information' would 'shed any additional light on the Government's conduct.'" *Associated Press*, 554 F.3d at 288 (quoting *Ray*, 502 U.S. at 178).

Plaintiffs already have received substantial information directed to "understanding how OJP views the desired qualifications of grantees, and how the federal programs will be implemented."  Pls. Mem. at 15.  Plaintiffs do not explain how the now extremely limited information withheld under Exemption 7(C) would "shed any additional light on the Government's conduct."  *Associated Press*, 554 F.3d at 288.  Indeed, Defendants' declaration provides detail about which schools, departments, and offices are involved in the law

enforcement aspect of the grant programs.  *See* Gaylord Decl. ¶ 13.  Thus, Plaintiff cannot, and

has not, shown how the additional disclosure will serve the public interest, and disclosure would

therefore be "an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Accordingly, Defendants' Motion for Summary Judgment as to the withheld information subject

to Exemption 7(C) is granted.  *See* Gaylord Decl., Ex. 1 Bates Numbers 1279, 1280, 1565, 1567,

4117, 4119, 4138, 4293.

### 3.  *Exemption 7(E)*

Exemption 7(E) allows an agency to withhold information "compiled for law

enforcement purposes" that "would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations

or prosecutions if such disclosure could reasonably be expected to risk circumvention of the

law."  5. U.S.C. § 552(b)(7)(E).  The Second Circuit has explained that Exemption 7(E) identifies

two categories of information that may be withheld:  the first, where disclosure would identify

"techniques and procedures," or "how law enforcement officials go about investigating a crime,"

and the second, in which disclosure would reveal "guidelines" for law enforcement

investigations, or how the agency allocates resources in planning future policies or conduct.  See

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec*., 626 F.3d 678, 682

(2d Cir. 2010).  "Discussion of law enforcement techniques and procedures is categorically

exempt from FOIA disclosure, 'without need for demonstration of harm.'"  *Iraqi Refugee*

*Assistance Project v. Dep't of Homeland Sec.*, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017)

(quoting *Lowenstein*, 626 F.3d at 681).  Exemption 7(E) "sets a relatively low bar for the agency

to justify withholding."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "Rather than

requiring a highly specific burden of showing how the law will be circumvented, [E]xemption

7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (internal quotation marks omitted). Defendants easily clear this bar.

Defendants provide ample explanations, supported by its declaration, of how the disclosure of the information withheld under Exemption 7(E) would clearly reveal key details about how law enforcement works to suppress gang activity and allow circumvention of those efforts:

- Disclosure of information at Bates Number 1279 would reveal "how many police squads work in a particular division and the shifts worked by those squads."

- Information at Bates Numbers 1280-1281 would disclose "the location of where programs under a law enforcement grant were planned to be conducted."

- Bates Numbers 1264-1265, 1267-1271, and 1282-1283 would tip off criminals to law enforcement's "description of its strategy and plan for disrupting a criminal gang organization."

- Redactions at Bates Numbers 1266 and 1294 were made to withhold "intelligence information regarding a possible attack by a criminal gang" and "the location of the possible attack."

- And the Defendants withheld "maps of targeted areas where law enforcement entities sought to conduct gang suppression operations pursuant to a law enforcement grant" at Bates Numbers 1609, 4292, 4294, and 4307. Gaylord Decl. ¶ 15.

As Defendants point out "[i]f criminals know when and where law enforcement is going to enforce the law, it will be easier to circumvent enforcement operations." Gaylord Decl. ¶ 16.

Defendants have clearly established that the information withheld under Exemption 7(E) was warranted and appropriate. Accordingly, Defendants' Motion for Summary Judgment on Bates Numbers 1264-1271, 1282, 1283, 1294, 1609, 4292, 4294, 4307 and the Exemption 7(E) redactions on Bates Numbers 1279, 1280, and 1281 is granted.

## **CONCLUSION**

For the above reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part with respect to:

- The withheld information subject to Exemption 7(C) at Bates Numbers 1279, 1280, 1565, 1567, 4117, 4119, 4138, 4293, 5956 and 5960.

- The withheld information subject to Exemption 7(E) at Bates Numbers 1264-1271, 1282, 1283, 1294, 1609, 4292, 4294, 4307 and the Exemption 7(E) redactions on Bates Numbers 1279, 1280, and 1281.

- The withheld information subject to Exemption 6 at Bates Numbers 1143, 1563-1564, and 1523.

Plaintiffs' Motion for Summary Judgment is **GRANTED** in part, in so far as invocation of Exemption 6 is overruled with respect to:

- The withheld information subject to Exemption 6 at Bates Numbers 1277-1278, 1566, 4118, 4139, 4289, 4290, 4291, 4310, 4423-4430, and 5961 and the information withheld solely on the grounds of Exemption 6 at Bates Number 1281.

It is **HEREBY ORDERED** that this information must be produced on or before October 22, 2021. The Clerk of the Court respectfully is requested to close the motions at ECF Nos. 46 and 49.

**SO ORDERED.**

**Date:   September 27, 2021**
**New York, NY**

MARY KAY VYSKOCIL
**United States District Judge**